[No. 81287-0.   En Banc.]
Argued September 9, 2008.     Decided March 5, 2009.

LISA BROWN, *as Senator and Majority Leader of the Washington State Senate, Petitioner*, v. BRAD OWEN, *as Lieutenant Governor, Respondent.*

708

*Hugh D. Spitzer, Thomas F. Ahearne,* and *Ramsey E. Ramerman* (of *Foster Pepper, PLLC*), for petitioner.

*Robert M. McKenna, Attorney General, Maureen A. Hart, Solicitor General,* and *Jeffrey T. Even* and *James K. Pharris, Deputy Solicitors General,* for respondent.

*Micah L. Balasbas* and *Seth L. Cooper* on behalf of American Legislative Exchange Council, amicus curiae.

*Michael J. Reitz* and *Jonathan D. Bechtle* on behalf of Americans for Tax Reform, Evergreen Freedom Foundation, National Taxpayers Union, NFIB Small Business

Legal Center, and Washington State Farm Bureau, amici curiae.

*Kristopher I. Tefft* on behalf of Association of Washington Business, amicus curiae.

*Richard M. Stephens, Samuel A. Rodabough,* and *Brian D. Amsbary* on behalf of Tim Eyman, Jack Fagan, Mike Fagan, and Voters Want More Choices, amici curiae.

¶1 FAIRHURST, J. — Petitioner Washington State Senator Lisa Brown seeks a writ of mandamus ordering respondent Lieutenant Governor Brad Owen to forward Senate Bill 6931 (SB 6931) to the Washington State House of Representatives. S.B. 6931, 60th Leg., Reg. Sess. (Wash. 2008). SB 6931 was brought before the senate for a vote on February 29, 2008. Pursuant to the supermajority requirement under RCW 43.135.035(1), Owen ruled SB 6931 required the approval of two-thirds of the senate for passage.[1] After it failed to receive sufficient votes, it was declared lost. Brown additionally requests a declaratory judgment invalidating the supermajority requirement of RCW 43.135.035(1) as unconstitutional under article II, section 22 of our state constitution. Because we find this an inappropriate action for mandamus, we do not reach this question.

## I. STATEMENT OF FACTS

A.    Taxpayer Protection Act

¶2 Washington voters approved Initiative 601 in 1993. LAWS OF 1994, ch. 2. Initiative 601 added a provision,

---

[1] RCW 43.135.035(1) requires a two-thirds majority of each house for passage of any bill that raises taxes. The parties do not contest whether SB 6931 constitutes a tax. If passed, SB 6931 would impose a 42¢ per liter surcharge on the sale of certain types of liquor to fund driving under the influence patrols and chemical dependency treatments.

effective after July 1, 1995, that "any action or combination of actions by the legislature that raises state revenue or requires revenue-neutral tax shifts may be taken only if approved by a two-thirds vote of each house." Former RCW 43.135.035(1) (1994) (LAWS OF 1994, ch. 2, § 4(1)). This provision, along with other parts of the initiative, was codified at chapter 43.135 RCW, known as the Taxpayer Protection Act (TPA). *Wash. State Farm Bureau Fed'n v. Gregoire*, 162 Wn.2d 284, 292, 174 P.3d 1142 (2007).

¶3 Before Initiative 601 went into effect, a group including public advocacy groups, legislators, and citizens sought to prevent its implementation, asking this court for a writ of mandamus ordering the legislature and its officers " 'to adhere to the requirements of the Washington State Constitution and to prohibit them from implementing and enforcing Initiative 601'." *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994) (quoting petition). We declined, holding that mandamus was inappropriate because this court may not compel legislative officers to perform discretionary duties such as determining whether Initiative 601 applies to a particular bill. *Walker*, 124 Wn.2d at 410. We stated that we would not act to issue a mandamus against a presiding officer of either house "until after a state officer has undertaken action under the initiative and there is a claim that the officer has abused his or her discretion." *Id.* at 411.

¶4 We also found petitioners' claim to be nonjusticiable, as Initiative 601 had not yet taken effect and concerned political questions. *Walker*, 124 Wn.2d at 411. "The course of future events is, at this time, purely speculative and subject to a challenge when a specific dispute arises in regard to a particular bill. Until presented with an existing, fact-specific action, this court will not involve itself in what is an essentially political dispute." *Id.* at 413. We pointed out that although petitioners speculated Initiative 601 would cause future harm, it was just as likely that the legislature would amend the initiative to prevent those harms. *Walker*, 124 Wn.2d at 413-14. This is, in fact, what the legislature has done.

¶5 Since its enactment, "[t]he TPA has been revised, amended, and reenacted many times." *Wash. State Farm Bureau*, 162 Wn.2d at 292. In 1998, the legislature expressly "reenacted and reaffirmed" Initiative 601 and also exempted certain state accounts from its requirements.[2] LAWS OF 1998, ch. 321, § 14. During the 2000 second special session, the legislature strengthened the TPA's expenditure limits. LAWS OF 2000, 2d Spec. Sess., ch. 2. In 2002, the legislature again reenacted and reaffirmed Initiative 601 but temporarily suspended its requirements for the 2001-03 biennium to address revenue shortfalls. LAWS OF 2002, ch. 33, § 1.[3]

¶6 The legislature reenacted and amended the TPA in 2005 but suspended the supermajority requirement from April 18, 2005, to June 30, 2007. LAWS OF 2005, ch. 72, § 2. Before the expiration of the exemption period, the legislature reimposed the supermajority requirement in Engrossed Substitute Senate Bill 6896, effective June 30, 2006. LAWS OF 2006, ch. 56, § 8.[4]

¶7 In 2007, voters approved Initiative 960, which amended, among other things, RCW 43.135.035(1). LAWS OF 2008, ch. 1, § 5. Initiative 960 faced a preelection challenge by petitioners seeking to prevent Secretary of State Sam Reed from placing the measure on the ballot. *Futurewise v. Reed*, 161 Wn.2d 407, 408, 166 P.3d 708 (2007). Petitioners sought an injunction and a declaratory judgment, holding the voter and legislative approval requirements for tax increases unconstitutional. *Id.* at 409. We held the preelection challenge to an initiative to be nonjusticiable, stating "[t]hat the law enacted by an initiative might be unconsti-

---

[2] The legislature has continued to exempt programs from TPA expenditure limit requirements. *See, e.g.*, LAWS OF 2002, ch. 56, § 407 (exempting sales tax on toll projects), ch. 290, § 5 (exempting criminal justice treatment, drug enforcement, and violence reduction account transfers); LAWS OF 2006, ch. 304, § 5 (exempting reinvesting in youth account transfers).

[3] Senator Brown was a sponsor of this bill. S.B. REP. on S.B. 6819, 57th Leg., Reg. Sess. (Wash. 2002).

[4] Senator Brown was a sponsor of this bill. FINAL B. REP. on E.S.S.B. 6896, 59th Leg., Reg. Sess. (Wash. 2006).

tutional does not mean that it is beyond the power of the State to enact." *Id.* at 411 (citing *Coppernoll v. Reed*, 155 Wn.2d 290, 302-04, 119 P.3d 318 (2005)).

¶8 Initiative 960 took effect on December 6, 2007.[5] Laws of 2008, ch. 1, § 19. RCW 43.135.035(1) (Laws of 2008, ch. 1, § 5(1))[6] now reads,

> any action or combination of actions by the legislature that raises taxes may be taken only if approved by a two-thirds vote of each house of the legislature, and then only if state expenditures in any fiscal year, including the new revenue, will not exceed the state expenditure limits established under this chapter. Pursuant to the referendum power set forth in Article II, section 1(b) of the state Constitution, tax increases may be referred to the voters for their approval or rejection at an election.

## B. Senate vote on SB 6931

¶9 Senator Brown is majority leader of the senate. She is one of the 25 members who voted in favor of SB 6931. Under our constitution, Lieutenant Governor Owen's duties include serving as president of the senate. Const. art. III, § 16.

¶10 This latest challenge to the TPA springs from Owen's ruling on a point of order before the senate. Article II, section 9 provides that each legislative house "may determine the rules of its own proceedings." The permanent rules of the senate govern those proceedings.[7] Under the permanent rules, the president of the senate may speak to points of order and must decide all questions of order,

---

[5] Brown challenges the two-thirds majority requirement of RCW 43.135.035(1), regardless of the constitutionality of Initiative 960.

[6] The purpose of this amendment was to clarify that the two-thirds majority provision applied to "tax increases inside and outside the general fund." Laws of 2008, ch. 1, § 1. Additionally, the amendment was intended to prohibit the legislature from "shift[ing] money between funds to get around the voter approval requirement for tax increases above the state expenditure limit." *Id.*

[7] The 2007-08 permanent rules of the senate were presented by Senators Brown and Mike Hewitt as Senate Resolution 8601.

subject to appeal by any member. 1 SENATE JOURNAL, 60th Leg., Reg. Sess., at 8 (Wash. 2007) (rule 1.4). He must decide and announce the results of all votes. *Id.* at 8, 12 (rules 1.8, 32). He must sign all acts and resolutions in an open session of the senate. *Id.* at 8 (rule 1.5). Members may discuss all points of order and appeal all decisions by the president of the senate. *Id.* at 12 (rule 32). Any senator may enter a protest against any action of the senate on any question. *Id.* (rule 34). Permanent rules may be changed or temporarily suspended by a majority of the senate. *Id.* (rule 35).

¶11 The rules committee placed SB 6931 for a second reading on February 29, 2008. SB 6931 proposed the reenactment of an increased tax on liquor sales. Rule 62 requires that bills be read on three separate days before a vote is taken unless the senate agrees to suspend this requirement. 1 SENATE JOURNAL, *supra*, at 17. Upon the motion of Senator Adam Kline, one of the bill's sponsors, the rules were suspended to allow SB 6931 to advance to the third reading, placing it before the senate for final passage.

¶12 Before the vote was taken, Senator Tim Sheldon raised a point of order, asking Owen, as president of the senate, to declare the number of votes necessary for the bill to pass in light of Initiative 960. Sheldon argued that because the bill imposed a tax, Initiative 960 required the bill receive two-thirds approval of the senate in order to pass. Before Owen ruled, Brown addressed the senate, asking Owen to rule that a simple majority was only required:

"Mr. President I believe this Point of Order raises a dilemma and I'd like to elaborate on that a bit. Like you each of us took an oath when we took office, in part that oath requires us to follow the Constitution and laws of the United States and the state of Washington. Unfortunately, sometimes the laws and the Constitution conflict and I believe this is one of those times. . . . Mr. President, a two-thirds requirement to pass certain types of bills in my opinion is anti-democratic and violates the Washington Constitution. . . . Mr. President, I do

not envy you having to make this decision. I know it is [a] difficult one that you won't make easily. I stand ready to respect you regardless of the outcome. I would ask that you find against the point of order raised by Senator Sheldon."

1 SENATE JOURNAL, *supra*, at 7.

¶13 Owen ruled a two-thirds majority was required to pass the bill:

"The Constitution is the preeminent law of our state, and all other laws and rules applicable to this body are unquestionably subordinate to the Constitution. Nonetheless, the President has taken an oath to uphold all the laws of the state and nation, including both Constitutional and statutory law. Whatever the merits of Senator Brown's legal argument—and the President is inclined to agree with her arguments—it is not for him to decide legal matters. Under our Constitutional framework of separation of powers, the authority for determining a legal conflict between the Constitution and a statute is clearly vested with the courts."

*Id.* at 10.

¶14 Brown did not appeal Owen's ruling to the senate body, nor did any other senator. Subsequently, 25 members, including Brown, voted for the bill, 21 members, including Sheldon, voted against the bill, one was absent, and two were excused. Because the bill did not receive a two-thirds majority vote, it was lost.[8]

C.   Procedural history

¶15 Brown filed this petition for a writ of mandamus or prohibition against Owen on March 3, 2008, just three days after Owen's ruling. She alleges Owen "has no legal right or authority to refuse to allow a bill that passes the Senate to be forwarded [to] the House as passed." Pet. Against State Officer at 1. Brown asked this court for accelerated review to resolve the issue before the expiration of the legislative

---

[8] The senate journal indicates the bill was lost because it did not receive a constitutional majority. This appears to be a mistake because SB 6931 received a constitutional majority but failed to receive the statutory two-thirds majority.

session on March 13, 2008. We denied Brown's request. Following the submission of briefs by both parties, we accepted review.

## II. ISSUE

¶16 Is a writ of mandamus ordering the president of the senate to forward a bill to the house that did not receive the statutorily required two-thirds vote an appropriate remedy where the petitioner argues the two-thirds vote requirement of RCW 43.135.035(1) is unconstitutional?

## III. ANALYSIS

¶17 Although Brown argues this case is a "straightforward constitutional question," this court cannot reach this question unless we have jurisdiction to do so. Pet'r's Updated Initial Br. in Support of Pet. Against State Officer at 1 (Pet'r's Updated Br.).

> We have held that "[t]his court's original jurisdiction is governed by the constitution and, by the plain language of the constitution, does not include original jurisdiction in a declaratory judgment action." *Walker v. Munro*, 124 Wn.2d 402, 411, 879 P.2d 920 (1994). Indeed, "[t]he only grounds on which this court could render declaratory relief [in an original action] is if such a declaration necessarily underlies a writ of mandate." *Id.*

*Wash. State Council of County & City Employees, Council 2 v. Hahn*, 151 Wn.2d 163, 170, 86 P.3d 774 (2004) (alterations in original); CONST. art. IV, § 4.

¶18 Our jurisdiction to issue a writ of mandamus is nonexclusive and discretionary. *Walker*, 124 Wn.2d at 407. " '[T]he court is vested with a sound legal discretion to determine for itself, as the question may arise, whether or not the case presented is of such a character as to call for the exercise of its original jurisdiction.' " *Wash. State Labor Council v. Reed*, 149 Wn.2d 48, 54, 65 P.3d 1203 (2003) (internal quotation marks omitted) (quoting *State ex rel. O'Connell v. Meyers*, 51 Wn.2d 454, 459-60, 319 P.2d 828

(1957)). Thus, we can only reach the constitutionality of RCW 43.135.035(1) if we find mandamus to be a proper remedy.

¶19 Mandamus is appropriate for " 'issues involv[ing] the constitutionality of a statute and matters relating to the expenditure of public funds.' " *State ex rel. Heavey v. Murphy*, 138 Wn.2d 800, 804, 982 P.2d 611 (1999) (quoting *Dep't of Ecology v. State Fin. Comm.*, 116 Wn.2d 246, 251, 804 P.2d 1241 (1991)); *City of Tacoma v. O'Brien*, 85 Wn.2d 266, 268, 534 P.2d 114 (1975). Nevertheless, "[w]hen directing a writ to the Legislature or its officers, a coordinate, equal branch of government, the judiciary should be especially careful not to infringe on the historical and constitutional rights of that branch." *Walker*, 124 Wn.2d at 407.

¶20 Our constitution does not contain a formal separation of powers clause. CONST. art. II, § 1, art. III, § 2, art. IV, § 1; *Carrick v. Locke*, 125 Wn.2d 129, 134-35, 882 P.2d 173 (1994). "Nonetheless, the very division of our government into different branches has been presumed throughout our state's history to give rise to a vital separation of powers doctrine." *Carrick*, 125 Wn.2d at 135 (citing *In re Salary of Juvenile Dir.*, 87 Wn.2d 232, 238-40, 552 P.2d 163 (1976)). "The doctrine serves mainly to ensure that the fundamental functions of each branch remain inviolate." *Id.*

¶21 To determine whether a particular action violates separation of powers, we look " 'not [to] whether two branches of government engage in coinciding activities, but rather whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another.' " *Id.* (quoting *Zylstra v. Piva*, 85 Wn.2d 743, 750, 539 P.2d 823 (1975)). This is similar to the federal political question doctrine. *See Baker v. Carr*, 369 U.S. 186, 217, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962) (describing a political question "as essentially a function of the separation of powers," characterized by "textually demonstrable constitutional commitment of the issue to a coordinate political department . . . or the impossibility of a court's undertaking

independent resolution without expressing lack of the respect due coordinate branches of government"). Political questions are " 'political and governmental, and embraced within the scope of the powers conferred upon Congress, and not therefore within the reach of judicial power.' " *State v. Manussier*, 129 Wn.2d 652, 670-71, 921 P.2d 473 (1996) (quoting *Pac. States Tel. & Tel. Co. v. Oregon*, 223 U.S. 118, 151, 32 S. Ct. 224, 56 L. Ed. 377 (1912)). Where the judicial branch is involved, our primary concerns are that the judiciary not be drawn into tasks more appropriate to another branch and that its institutional integrity be protected. *Carrick*, 125 Wn.2d at 136 (citing *Mistretta v. United States*, 488 U.S. 361, 383, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989)).

¶22 Before Owen's parliamentary ruling triggering this dispute, Brown appeared to urge Owen to declare RCW 43.135.035(1) unconstitutional. Owen refused to do so, observing that it is the duty of the judiciary to make legal rulings. Having failed to convince Owen to make a legal determination, she now asks this court to make a parliamentary ruling. We decline to do so.

A. A writ of mandamus ordering the president of the senate to forward SB 6931 would violate the separation of powers doctrine

¶23 "The spirit of reciprocity and interdependence requires that if checks by one branch undermine the operation of another branch or undermine the rule of law which all branches are committed to maintain, those checks are improper and destructive exercises of the authority." *Juvenile Dir.*, 87 Wn.2d at 243. A writ of mandamus contravening a parliamentary ruling by the president of the senate is such an improper check. A ruling by this court overturning the president of the senate's ruling on a point of order would undermine the constitutional authority of the senate to govern its own proceedings and the lieutenant governor's duty to preside over those proceedings.

1. *This court will not interfere in the internal proceedings of a legislative house to overturn a ruling on a point of order*

¶24 "The right of a legislative body to exercise its legislative powers will not be invaded by the judicial branch of government." *State ex rel. Gunning v. Odell*, 58 Wn.2d 275, 278, 362 P.2d 254 (1961) (citing *Household Fin. Corp. v. State*, 40 Wn.2d 451, 244 P.2d 260 (1952)), *modified*, 60 Wn.2d 895, 371 P.2d 632 (1962). Essential to the exercise of legislative powers is the ability of each house to govern its own proceedings. *Wash. State Farm Bureau*, 162 Wn.2d at 301 (" 'A legislative assembly, when established, becomes vested with all the powers and privileges which are necessary and incidental to a free and unobstructed exercise of its appropriate functions.' " (internal quotation marks omitted) (quoting *State ex rel. Robinson v. Fluent*, 30 Wn.2d 194, 203-04, 191 P.2d 241 (1948))); *Zylstra*, 85 Wn.2d at 755 (Utter, J., concurring) (internal procedural powers are prerequisite to the exercise of legislative power); *City of Fircrest v. Jensen*, 158 Wn.2d 384, 394, 143 P.3d 776 (2006) (inherent authority of self-governance protects functioning as independent branch), *cert. denied*, 549 U.S. 1254 (2007); *cf. Juvenile Dir.*, 87 Wn.2d at 245 (the judiciary has inherent authority to protect itself in the performance of its constitutional duties); *see also Spokane County v. State*, 136 Wn.2d 663, 668, 966 P.2d 314 (1998) (the need for all branches "to maintain effective control over their respective affairs cannot be overstated"). In addition to this inherent power, our constitution specifically confers on each house of the legislature the right to "determine the rules of its own proceedings," article II, section 9, and charges the lieutenant governor with administering those rules as president of the senate. CONST. art. III, § 16.

¶25 Our system of government allows each branch to exercise some control over the others in the form of checks and balances, but the power to interfere is a limited one. *Juvenile Dir.*, 87 Wn.2d at 239. We will not

interfere where doing so will " 'threaten[ ] the independence or integrity or invade[ ] the prerogatives of another [branch].' " *Carrick*, 125 Wn.2d at 135 (quoting *Zylstra*, 85 Wn.2d at 750). Thus, we will reluctantly act as impartial referee between branches of government in order to maintain a constitutional balance between them, *Washington State Legislature v. State*, 139 Wn.2d 129, 137, 139, 985 P.2d 353 (1999), but we will not referee disputes over parliamentary rulings between members of the same house.

¶26 Pursuant to article II, section 9, the Washington State Senate has adopted its permanent rules and Reed's Parliamentary Rules. The version governing the 2007-08 biennium was submitted by Senators Brown and Hewitt as Senate Resolution 8601. These rules govern all sessions of the senate during the biennium unless the senate suspends a permanent rule or order by a two-thirds majority vote. 1 SENATE JOURNAL, *supra*, at 12 (rule 35). The president of the senate decides all questions of order. *Id*. at 8 (rule 1.4). "When interpreting these rules, however, the presiding officer makes parliamentary rulings, not constitutional rulings." Kristen L. Fraser, *Method, Procedure, Means, and Manner: Washington's Law of Law-Making*, 39 GONZ. L. REV. 447, 459 (2003-04) (footnote omitted). Any member of the senate who disagrees with the president's ruling on a point of order may appeal to the body of the senate. 1 SENATE JOURNAL, *supra*, at 12 (rule 32).

¶27 Both Owen, as president of the senate, and Brown, as a member of that body, are subject to the procedural rules of the senate. Owen was required to rule on the point of order by Sheldon, and Brown was allowed to address the senate in opposition to the point of order. Owen gave a parliamentary ruling as is his obligation as president of the senate. Brown had the option to appeal to her colleagues and overturn Owen's ruling with a simple majority of the senate. She did not. Instead, Brown asked this court to intervene by ordering Owen to forward a bill that, pursuant to Owen's unchallenged parliamentary ruling, failed to receive sufficient votes for passage.

¶28 The power to establish and administer the procedural rules of the legislature has been committed solely to the legislature—not to the judiciary. CONST. art. II, §§ 9, 32. These internal rules are essential to the senate's effectiveness as a legislative body. We find that it would be impossible to overturn Owen's parliamentary ruling—particularly where no member of the senate attempted to do so by exercising a right of appeal—without expressing disrespect for that body. *See Baker*, 369 U.S. at 210. Finding this a political question, we hold that a mandamus action is inappropriate.[9]

2. *Respect for a coequal branch of government requires this court to defer to the legislature when it legislates and not look beyond the face of a bill*

¶29 Based upon separation of powers concerns, this court has traditionally abstained from considering internal legislative functions surrounding the passage of a bill. "The legislature has plenary power to enact, amend, or repeal a statute, except as restrained by the state and federal constitutions." *Wash. State Farm Bureau*, 162 Wn.2d at 306 (citing *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 248, 88 P.3d 375 (2004)). Just as the legislature may not go beyond the decree of the court when a decision is fair on its face, the judiciary will not look beyond the final record of the legislature when an enactment is facially valid, even when the proceedings are challenged as unconstitutional. *State ex rel. Reed v. Jones*, 6 Wash. 452,

---

[9] States whose constitutions also grant their legislatures power to establish procedural rules similarly hold that intrahouse disputes are nonjusticiable. *See, e.g., State ex rel. Grendell v. Davidson*, 86 Ohio St. 3d 629, 633, 1999-Ohio-130, 716 N.E.2d 704 ("A writ of mandamus will not issue to a legislative body or its officers to require the performance of duties that are purely legislative in character and over which such legislative bodies have exclusive control." (citing *City of Wapakoneta v. Helpling*, 135 Ohio St. 98, 108, 19 N.E.2d 772 (1939))); *State ex rel. Spaeth v. Meiers*, 403 N.W.2d 392, 394 (N.D. 1987) (refusing to reach constitutional issue of whether supermajority requirement is constitutional because dispositive issue in case concerned interpretation and application of legislature's procedural rules); *Gray v. Gienapp*, 2007 SD 12, 727 N.W.2d 808 (court has no power to interfere in internal disciplinary proceedings of legislative body). *But see Tuck v. Blackmon*, 798 So. 2d 402 (Miss. 2001) (court looks for abuse of discretion where constitution prescribes legislative rules of procedure).

460, 34 P. 201 (1893). This is all the more true of bills that have failed to be enacted.

¶30 "The enrolled bill rule forbids an inquiry into the legislative procedures preceding the enactment of a statute that is 'properly signed and fair upon its face.' " *Wash. State Grange v. Locke*, 153 Wn.2d 475, 499-500, 105 P.3d 9 (2005) (quoting *Schwarz v. State*, 85 Wn.2d 171, 175, 531 P.2d 1280 (1975)). "The court 'will not go behind an enrolled enactment to determine the method, the procedure, the means, or the manner by which it was passed in the houses of the legislature.' " *Id.* at 500 (quoting *Derby Club, Inc. v. Becket*, 41 Wn.2d 869, 882, 252 P.2d 259 (1953) (Hill, J., concurring)). This doctrine is grounded in respect for the legislature's role as a coequal branch of government "in no way inferior to the judicial branch," *id.* (citing *Roehl v. Pub. Util. Dist. No. 1*, 43 Wn.2d 214, 222, 261 P.2d 92 (1953)), and a rejection of the theory that the judiciary is the only branch with "sufficient integrity . . . to insure the preservation of the constitution." *Reed*, 6 Wash. at 463.

> Each of the three departments into which the government is divided are equal, and each department should be held responsible to the people that it represents, and not to the other departments of the government, or either of them. . . . Such being the respective duties of the several departments, it seems to us that the acts of each of them when certified as required by the constitution, or by such a universal course of practice as to have the force of a constitutional provision, should be conclusive upon each of the other departments.

*Id.* at 461-62.

¶31 We have declined to examine the history of a bill even where the petitioner claimed that constitutionally mandated procedures were not followed. *See State ex rel. Dunbar v. State Bd. of Equalization*, 140 Wash. 433, 249 P. 996 (1926) (whether bill not properly authenticated); *Morrow v. Henneford*, 182 Wash. 625, 47 P.2d 1016 (1935) (whether bill passed after expiration of legislative session); *State ex rel. Bugge v. Martin*, 38 Wn.2d 834, 232 P.2d 833 (1951); *Roehl*, 43 Wn.2d 214 (whether amendment

changed scope and object of bill). We have refused to determine whether members of the senate were deceived by the title of a bill. *State ex rel. Wash. Toll Bridge Auth. v. Yelle*, 61 Wn.2d 28, 377 P.2d 466 (1962). We have declined to examine the investigations of legislative committees. *State ex rel. Hodde v. Superior Court*, 40 Wn.2d 502, 507, 244 P.2d 668 (1952). We held, " '[w]here an act of the legislature had been properly certified, courts had no authority to inquire into any prior proceedings on the part of the legislature to ascertain whether the mandatory provisions of the constitution had been complied with.' " *Dunbar*, 140 Wash. at 443-44 (quoting *Parmeter v. Bourne*, 8 Wash. 45, 56, 35 P. 586, 35 P. 757 (1894)).

¶32 This case presents the negative corollary of the enrolled bill rule by asking the court to inquire into the internal workings of the legislature to determine whether a failed bill should have passed. Brown asks us to declare a bill passed by the senate based upon her interpretation of the constitutionally required number of votes for passage. The same considerations for the coequal status of the legislature apply. Just as we will not go beyond an enrolled enactment to examine the procedures by which it was enacted, we will not interfere with the internal workings of the senate to examine the procedures by which a bill failed.

B. We will not substitute the judgment of this court for that of a legislative officer performing a discretionary duty

¶33 Mandamus is available "to compel a state officer to undertake a clear duty." *Gerberding v. Munro*, 134 Wn.2d 188, 195, 949 P.2d 1366 (1998). A mandatory duty exists when a constitutional provision or statute directs a state officer to take some course of action. *See, e.g., Heavey*, 138 Wn.2d at 804-05 (statute providing state treasurer shall deposit certain taxes created a mandatory duty); *Wash. State Labor Council*, 149 Wn.2d at 55 (statute providing the secretary of state shall canvass votes and certify the results to the governor created a mandatory

duty). Where we find a mandatory duty, we must further determine whether that duty is ministerial or discretionary in nature.[10]

¶34 Directing the performance of a discretionary duty would "usurp the authority of the coordinate branches of government." *Walker*, 124 Wn.2d at 410; *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170, 2 L. Ed. 60 (1803) ("[t]he province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion"). A court may compel a state officer to perform a discretionary duty but cannot direct how such discretion shall be exercised. *O'Connor v. Matzdorff*, 76 Wn.2d 589, 606-07, 458 P.2d 154 (1969). Whether a duty is ministerial or discretionary depends on the nature of the duty, not the person or position charged with performing such duties. *State ex rel. Linden v. Bunge*, 192 Wash. 245, 249, 73 P.2d 516 (1937).

¶35 In *Walker*, 124 Wn.2d at 410, we refused to issue a writ of mandamus with respect to the duties of the speaker of the house and the president of the senate because we found those duties discretionary. We reasoned:

> The Petitioners claim that the Respondents, Speaker of the House and President of the Senate, have the duties to preside over the Legislature, certainly not an appropriate subject for mandamus, and to certify and sign bills passed. The signing of a bill is not a ministerial task, as it involves a decision regarding the number of votes required for a particular action and whether those votes have been properly cast. In fact, these presiding legislative officers will be required to determine whether Initiative 601 applies to a particular bill if some or all of Initiative 601 remains the law. We will not grant a writ relating to these tasks.

---

[10] A duty is ministerial " 'where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.' " *State ex rel. Clark v. City of Seattle*, 137 Wash. 455, 461, 242 P. 966 (1926) (quoting 18 Ruling Case L. at 116 (Mandamus)). A duty involving the exercise of discretion or judgment is discretionary. *State ex rel. Linden v. Bunge*, 192 Wash. 245, 249, 73 P.2d 516 (1937).

*Id.* This is exactly what happened in this case. Owen considered whether Initiative 601, codified in part as RCW 43.135.035(1), applied to the bill, determined a two-thirds majority vote was required, and then declared the bill lost because it had not gathered a sufficient number of votes.

¶36 In *Walker*, 124 Wn.2d at 411, we further held that we would "refrain from acting until after a state officer has undertaken action under the initiative and there is a claim that the officer has abused his or her discretion." We have described this standard in the mandamus area as " 'arbitrary or capricious, . . . prompted by wrong motives, [such that] there is not only an abuse of discretion, but, in contemplation of law, there has been no exercise of the discretionary power.' " *State ex rel. Reilly v. Civil Serv. Comm'n*, 8 Wn.2d 498, 501, 112 P.2d 987 (1941) (quoting *State ex rel. Yeargin v. Maschke*, 90 Wash. 249, 253, 155 P. 1064 (1916)). Brown claims that a writ of mandamus is warranted because Owen "had no legal right or authority to refuse to allow [SB 6931] to be forwarded on to the House as passed." Pet'r's Updated Br. at 2. She appears to argue that Owen abused his discretion by *not* making a judicial determination that RCW 43.135.035(1) is unconstitutional. Yet, as she points out in her briefing, "[i]t is the exclusive province and duty of this Court to decide whether a statute is or is not unconstitutional." Pet'r's Updated Br. at 2.

¶37 While serving as the presiding officer of the senate, the lieutenant governor is an officer of the legislative branch. *State ex rel. Lemon v. Langlie*, 45 Wn.2d 82, 98, 273 P.2d 464 (1954). It is beyond the power of the legislature to rule that a law it has enacted is unconstitutional. *Wash. State Farm Bureau*, 162 Wn.2d at 303-04 (" '[T]he legislature is precluded by the constitutional doctrine of separation of powers from making *judicial* determinations.' " (alteration in original) (quoting *O'Brien*, 85 Wn.2d at 271)). Owen acted properly by declining to decide the constitutionality of RCW 43.135.035(1) and did not exceed his authority or abuse his discretion by ruling on a point of order consistent with RCW 43.135.035(1). Because we find the

duties at issue are discretionary and find no abuse of discretion, we hold that a writ of mandamus would be improper.

## IV. CONCLUSION

¶38 This original action is improperly before this court on application for a writ of mandamus and is a nonjusticiable political question. Intervention of this court into an intrahouse dispute over a parliamentary ruling to compel the president of the senate to perform a discretionary duty would be a grave violation of separation of powers. We dismiss the action.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, J.M. JOHNSON, and STEPHENS, JJ., concur.