YU, J. (concurring)
 

 ¶ 65 I concur in the lead opinion by Justice Gordon McCloud and write solely to express my unease at the end result of this court's split decision. A lawful initiative from the people was presented to the legislature. It was adopted and enacted by the legislature without amendment. No referendum was filed. There is no basis for this court to retract it.
 

 ¶ 66 Justice Madsen's solution to the dilemma created by the legislature is to send Initiative 940 (I-940) back to the people for another vote, but on what authority? Without doubt, the legislature's effort to amend 1-940 is prohibited, but the facts here are that I-940 was not rejected or amended. Meanwhile, Justice Stephens' solution is seemingly just to wash our hands of it all and put everything to the voters.
 

 ¶ 67 While there is some appeal to these simplistic solutions, they damage our jurisprudence, undermine respect for the separation of powers, and empower professional initiative peddlers selling governance by populism in place of elected representation. Notwithstanding the cover of populism, a careful reading of these opinions actually exposes unconstitutional judicial meddling rather than progressive populism.
 

 ¶ 68 Contrary to the opinions of Justices Madsen and Stephens, this court does not have the authority to retract a validly enacted law without first declaring it invalid or unconstitutional. Holding otherwise suggests that this
 court may now intervene in the procedures of the legislature and interfere with the constitutional right of the people to enact valid law through initiatives to the legislature. I strongly disagree with this inappropriate expansion of judicial power. The solutions proffered by Justices Madsen and Stephens violate the separation of powers doctrine, and the precedent set by our split opinion in this case presents worrisome, long-ranging consequences for this state.
 

 ANALYSIS
 

 ¶ 69 As discussed in the lead opinion by Justice Gordon McCloud, an honest adherence to the separation of powers doctrine limits this court's ability to interfere in the independence and integrity of another coequal branch of government.
 
 State v. Gresham,
 

 173 Wash.2d 405
 
 , 428,
 
 269 P.3d 207
 
 (2012). This court's check on the legislature is generally limited to interpreting the legislature's acts and considering their constitutionality.
 
 State ex rel. Daschbach v. Meyers
 
 ,
 
 38 Wash.2d 330
 
 , 332,
 
 229 P.2d 506
 
 (1951). Expanding this check, as Justices Madsen and Stephens would have us do, is an " 'improper and destructive exercise[ ]' " of the court's authority.
 
 Brown v. Owen
 
 ,
 
 165 Wash.2d 706
 
 , 719,
 
 206 P.3d 310
 
 (2009) (quoting
 
 In re Salary of Juvenile Dir.,
 

 87 Wash.2d 232
 
 , 243,
 
 552 P.2d 163
 
 (1976) ).
 

 ¶ 70 To ensure that the judicial branch does not improperly interfere with the lawmaking function of the legislative branch, we have, until today, consistently adhered to the enrolled bill doctrine. The enrolled bill doctrine long predates our federal constitution and was firmly upheld by the United States
 Supreme Court in 1892. In
 
 Field v. Clark
 

 ,
 
 importers challenged an 1890 tariff act on the grounds that the act was not validly passed.
 
 143 U.S. 649
 
 , 665-66,
 
 12 S.Ct. 495
 
 ,
 
 36 L.Ed. 294
 
 (1892). Though the petitioner brought a plausible accusation that the legislature had not followed procedural requirements set by the Constitution, the Court
 rejected the claim, holding that despite the potential defects in its passage, a certified enrolled bill is "complete and unimpeachable."
 

 Id.
 

 at 672
 
 ,
 
 12 S.Ct. 495
 
 . The Court warned:
 

 The evils that may result from the recognition of the principle that an enrolled act ... is conclusive evidence that it was passed by congress, according to the forms of the constitution, would be far less than those that would certainly result from a rule making the validity of congressional enactments depend upon the [internal procedure of legislative actors].
 

 Id.
 

 at 673
 
 ,
 
 12 S.Ct. 495
 
 .
 

 ¶ 71 Only 1 year after
 
 Field
 
 , the Washington Supreme Court affirmed the enrolled bill doctrine in state jurisprudence when it soundly rejected a claim that a bond was invalid because "constitutional requirements had not been observed by the legislature in its passage."
 
 State ex rel. Reed v. Jones
 
 ,
 
 6 Wash. 452
 
 , 453,
 
 34 P. 201
 
 (1893). Like the United States Supreme Court, this court recognized the disastrous consequences of judicial meddling into the procedures behind validly enacted laws. If such an approach were used,
 

 before the courts can find that the bill has become a law, they must look and see that all the steps required by the constitution to constitute it such have been observed by the legislature. Such a construction given to the enrolled act would render it practically impossible for the courts even to determine what was the law.
 

 Id.
 
 at 456,
 
 34 P. 201
 
 . Rejecting such consequences and embracing the enrolled bill doctrine, this court held that "[w]hat constitutes the statutory law of a state must necessarily be an absolute proposition, and not simply a prima facie one."
 
 Id.
 
 at 458,
 
 34 P. 201
 
 . For 125 years, this court has repeatedly upheld the critical importance of the enrolled bill doctrine.
 
 See
 

 Brown,
 

 165 Wash.2d at 723-24
 
 ,
 
 206 P.3d 310
 
 ;
 
 Wash. State Grange v. Locke
 
 ,
 
 153 Wash.2d 475
 
 , 499-500,
 
 105 P.3d 9
 
 (2005) ;
 
 State ex rel. Bugge v. Martin,
 

 38 Wash.2d 834
 
 , 840-41,
 
 232 P.2d 833
 
 (1951). We do not have the authority to second-guess how decisions are made in the legislature.
 

 ¶ 72 Justice Stephens is correct that the enrolled bill doctrine prohibits "judicial meddling" into legislative processes. Dissent (Stephens, J.) at 1206. And I agree that the court "should not go beyond the four corners of the enacted measures."
 
 Id.
 
 at 1207. But without going beyond the "four comers" of I-940 itself, there is only an unamended, certified enrolled bill that was accepted by the legislature pursuant to article II, section 1 (a) of the state constitution. Engrossed Substitute House Bill 3003 was enacted separately, outside of the "four comers" of I-940. It is only through judicial meddling that the court could conclude I-940 was
 
 not
 
 enacted "without change or amendment ... before the end of' the legislative session. CONST. art. II, § 1(a).
 

 ¶ 73 Justice Stephens' reasoning thus directly implicates the enrolled bill doctrine and falsely asserts that "the legislature in fact rejected I-940." Dissent (Stephens, J.) at 1207. Meanwhile, Justice Madsen contends that "the legislature has proposed an alternative measure." Concurrence/dissent (Madsen, J.) at 1201;
 
 see also
 
 dissent (Stephens, J.) at 1205 n.5. That is not what happened. The legislature certified that I-940 was accepted and enacted on March 8, 2018. Clerk's Papers at 132-40 ( CERTIFICATION OF ENROLLMENT : INITIATIVE 940, 65th Leg, Reg. Sess. (Wash. 2018) ). Unlike the procedure with I-940, when the legislature rejects an initiative with an alternative proposal, neither the initiative nor the proposal is passed into law before submission to the secretary of state. And
 
 Black's Law Dictionary
 
 defines "proposal" as it is commonly understood, that is, temporary: "Something offered for consideration or acceptance; a suggestion." BLACK'S LAW DICTIONARY 1413 (10th ed. 2014). As a validly enacted statute, Laws of 2018, chapter 11 is not a "proposal" offered for consideration described by article II, section 1(a). Laws do not become mere proposals at the discretion of this court.
 

 ¶ 74 Here, regardless of what happened before its passage, I-940 was not rejected,
 and an alternative was not proposed.
 I-940 was validly enacted into the 2018 session laws by the state legislature. Questioning the express declaration of the legislature regarding the acceptance of a duly enacted bill is necessarily peeking into the legislative process preceding the enactment of a statute. Such action by this court is impermissible according to the enrolled bill doctrine.
 
 Wash. State Grange,
 

 153 Wash.2d at 499-500
 
 ,
 
 105 P.3d 9
 
 .
 

 ¶ 75 As was made clear in
 
 Jones
 

 ,
 
 regardless of the evidence presented, this court does not have the constitutional authority to question or contradict the legislature's certification that 1-940 was accepted without amendment and duly certified into law as chapter 11 of the 2018 session laws.
 
 See
 
 dissent (Stephens, J.) at 1206-07. "[T]here is no method provided by the constitution or laws for a direct attack upon an enrolled bill."
 
 Jones,
 

 6 Wash. at 460
 
 ,
 
 34 P. 201
 
 . The procedural mechanics of the legislature, however novel or peculiar, are fully irrelevant when this court is presented with a certified bill.
 

 CONCLUSION
 

 ¶ 76 This unprecedented judicial act departs from over a century of state precedent and undermines the stability of our laws. This decision will allow similar challenges not just to other initiatives but to any enrolled law where a question arises about whether the legislature complied with certain constitutional procedures.
 

 ¶ 77 Apparently free to disregard the enrolled bill doctrine, creative petitioners might now assert a law should be ripped from the statute books-without a judgment about its constitutionality-if, for example, they can demonstrate an improper vote of yeas and nays occurred pursuant to article II, section 22. Or perhaps a law might be dissolved because the legislature neglected to have a presiding officer of each house in open session properly sign a bill according to article II, section 32. A petitioner might soon ask this court to retract an enacted law because it was not introduced
 at least 10 days before the final adjournment of the legislature as required by article II, section 36, or entered into the proper legislative journal, if requested, pursuant to article II section 21. According to the precedent set by the split opinion in this case and the reasoning in Justice Stephens' dissent, this court is willing to invade the exclusive province of the legislature and allow petitioners to corrupt the finality and deference this court usually affords to the laws bearing the certified seal of Washington.
 

 ¶ 78 The result in this case upends the balance of power between the branches of government when it asserts that valid law is "not a law" by subjecting it to the uncertainties of the ballot. In this instance, the danger of breaching the separation of powers is less about upholding the will of the legislature than it is about keeping the court within its realm of constitutional authority. This court violates the trust of the people of Washington when it frustrates the finality of the people's initiative to the legislature and neglects to protect the sanctity of law.
 

 MADSEN, J. (concurring/dissenting)
 

 ¶ 79 I agree with the lead opinion to the extent that it holds Engrossed Substitute House Bill (ESHB) 3003 amended Initiative 940 (I-940) in the same session in which the legislature enacted I-940. In my view, however, because I-940 was not enacted "without change or amendment" in the same regular session, it must be certified to the people for a vote as provided in article II, section 1(a) of our state constitution. Accordingly, I disagree with the lead opinion that neither measure should be placed on the November ballot. The governing constitutional provision states in relevant part as follows:
 

 (a) Initiative: The first power reserved by the people is the initiative. Every such petition shall include the full text of the measure so proposed. In the case of initiatives to the legislature and initiatives to the people, the number of valid signatures of legal voters required shall be equal to eight percent of the votes cast for the office of governor at the last gubernatorial election
 preceding the initial filing of the text of the initiative measure with the secretary of state.
 

 Initiative petitions shall be filed with the secretary of state not less than four months before the election at which they are to be voted upon, or not less than ten
 days before any regular session of the legislature. If filed at least four months before the election at which they are to be voted upon, he shall submit the same to the vote of the people at the said election. If such petitions are filed not less than ten days before any regular session of the legislature, he shall certify the results within forty days of the filing. If certification is not complete by the date that the legislature convenes, he shall provisionally certify the measure pending final certification of the measure.
 
 Such initiative measures,
 
 whether certified or provisionally certified, shall take precedence over all other measures in the legislature except appropriation bills and
 
 shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session.
 
 If any such initiative measures shall be enacted by the legislature it shall be subject to the referendum petition, or it may be enacted and referred by the legislature to the people for approval or rejection at the next regular election.
 
 If it is rejected or if no action is taken upon it by the legislature before the end of such regular session, the secretary of state shall submit it to the people for approval or rejection at the next ensuing regular general election. The legislature may reject any measure so proposed by initiative petition and propose a different one dealing with the same subject, and in such event both measures shall be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election.
 

 WASH. CONST. art. II, § 1(a) (emphasis added). As the italicized language attests, under the circumstances here, our constitution requires that I-940 be placed on the November ballot.
 

 ¶ 80 I also disagree with the lead opinion's conclusion that ESHB 3003 is unconstitutional. Instead, I agree with Justice Stephens's dissent, which notes that "the plaintiffs make no claims of invalid or unconstitutional action" and, thus, "[c]ontrary to the lead opinion's approach, we ... need
 not decide whether any legislative enactment was invalid or unconstitutional." Dissent (Stephens, J.) at 1207. Further, I agree that "the legislature validly passed both I-940 and ESHB 3003."
 

 Id.
 

 Nowhere in the above quoted language from article II section 1(a) does it indicate that legislative attempts to amend an initiative petition violates the constitution. Rather, such action triggers specific consequences.
 

 ¶ 81 I part ways with the dissents by Chief Justice Fairhurst and Justice Stephens to the extent they would require that both I-940 and ESHB 3003 be placed on the ballot. I acknowledge that in the usual circumstance-where the legislature has proposed an alternative measure addressing the same subject matter as an initiative petition-placing both measures on the ballot would be the appropriate result under article II, section 1(a). But in this instance, ESHB 3003, by its express terms, voids itself if 1-940 is placed on the ballot. ESHB 3003 provides in relevant part:
 

 This act takes effect June 8, 2018, only if chapter ... (Initiative Measure No. 940), Laws of 2018, is passed by a vote of the legislature during the 2018 regular legislative session and a referendum on the initiative under Article II, section 1 of the state Constitution is not certified by the secretary of state. If the initiative is not approved during the 2018 regular legislative session, or if a referendum on the initiative is certified by the secretary of state, this act is void in its entirety.
 

 Clerk's Papers (CP) at 55 ( LAWS OF 2018, ch. 10, § 10) (alteration in original). It would be absurd to require that a void proposal be placed on the ballot for a vote of the people. Thus, in this circumstance, only I-940 should be placed on the ballot as required by article II, section 1(a).
 

 ¶ 82 In sum, in result I agree in part with the majority that ESHB 3003 does not go on the November ballot. I agree in part with the noted dissents that I-940 does go on the November ballot. Accordingly, the writ of mandamus, "directing the Secretary of State to certify onto the 2018
 general election ballot ... Initiative 940," should be affirmed. CP at 253.
 

 ¶ 83 For the reasons discussed, I concur in part and dissent in part.