

This opinion was filed for record

at 8:00 AM on 8/28/18

_____ Deputy
for SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| TIM EYMAN and MICHAEL J. PADDEN, | No. 95749-5 |
| Respondents/Cross Appellants, | EN BANC |
| v. | |
| KIM WYMAN, in her capacity as Secretary of State, | Filed AUG 2 8 2018 |
| Defendant, | |
| THE WASHINGTON STATE LEGISLATURE; and DE-ESCALATE WASHINGTON, | |
| Appellants/Cross Respondents, | |
| CYRUS HABIB, in his capacity as Lieutenant Governor, | |
| Intervenor. | |

GORDON McCLOUD, J.—The people of the state of Washington exercised their constitutionally guaranteed initiative power by referring Initiative 940 (I-940), an initiative concerning police reform, to the legislature. The legislature voted to enact it. The enrolled bill doctrine—a doctrine that ensures judicial respect for the legislative branch—bars this court from second-guessing the legislature's own

declaration that it validly enacted that bill into law. Specifically, the enrolled bill doctrine bars this court from invalidating the enrolled I-940 based on pure speculation about whether the legislature would still have enacted I-940 if it had not passed ESHB[1] 3003 first. I-940 passed; the judiciary lacks the power to treat it as "not passed."

The legislature also passed a conditional bill, ESHB 3003, purporting to prospectively amend I-940 if it passed later—in this case, just a few minutes later. But that conditional, prospective bill violates the explicit language and carefully constructed allocation of legislative power contained in article II, section 1 of the Washington Constitution. That section of the constitution bars the legislature from amending an initiative during the same regular legislative session in which that initiative is first considered. The legislature might certainly disagree with an initiative and "propose a different one dealing with the same subject" to the Washington voters. WASH. CONST. art. II, § 1(a). But the legislature did not make such a "propos[al]" in this case, and the constitution does not empower a court to compel the secretary of state to put a nonproposal like ESHB 3003 on the ballot.

I would therefore reverse the superior court in part and vacate the writ of mandamus compelling the secretary of state to place I-940 on the ballot. A majority

---

[1] "ESHB" refers to Engrossed Substitute House Bill.

of this court, however, disagrees. For that reason, the decision of the superior court to issue a writ of mandamus compelling the secretary of state to place I-940 on the ballot is affirmed.

OVERVIEW OF THE CASE

The Washington State Constitution vests the power to make laws in the legislature. But it also reserves some power to make laws in the people: the power to initiate laws directly, through initiatives to the people for election, and the power to initiate laws indirectly, through initiatives to the legislature. *Id.*

This case concerns the indirect legislative process. De-Escalate Washington referred I-940, regarding police reform, to the legislature for consideration during the 2018 regular legislative session. Article II, section 1(a) provides that once an initiative is certified to the legislature for consideration, the initiative "shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session." If the legislature fails to enact the certified initiative without change or amendment before the end of the regular session, the initiative "shall be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election" along with any alternative measure proposed by the legislature. *Id.*

In this case, the legislature "enacted" I-940, and it did so before the end of "such regular session." The parties focus their dispute on the impact of another bill

3

enacted during that same regular session, ESHB 3003. ESHB 3003 was enacted right before I-940. It is entitled "AN ACT Relating to law enforcement; amending [creating and amending statutes and provisions of I-940]" and it purports to prospectively amend I-940 if I-940 were to pass in the future. LAWS OF 2018, ch. 10, § 10.[2] The first question for this court is whether the legislature enacted I-940 "without change or amendment . . . before the end of [that] regular session," since the legislature also enacted ESHB 3003 in the same session. WASH. CONST. art. II, § 1(a). The second question is whether I-940 must appear on the November ballot either alone or with ESHB 3003.

I think it is clear that I-940 and ESHB 3003 were both validly enacted, despite the fact that ESHB 3003 purported to conditionally and prospectively amend I-940 before I-940 was enacted. I therefore conclude that neither I-940 nor ESHB 3003 may appear on the November ballot. But ESHB 3003 is invalid for a different reason: article II, section 1(a) of our state constitution bars the legislature from amending I-940 during the same session in which it was enacted, and ESHB 3003 purports to do

---

[2] Section 10 states:

> This act takes effect June 8, 2018, only if chapter . . . (Initiative Measure No. 940), Laws of 2018, is passed by a vote of the legislature during the 2018 regular legislative session and a referendum on the initiative under Article II, section 1 of the state Constitution is not certified by the secretary of state. If the initiative is not approved during the 2018 regular legislative session, or if a referendum on the initiative is certified by the secretary of state, this act is void in its entirety.

4

just that. I would therefore vacate the writ of mandamus issued by the trial court to compel the secretary of state to place I-940 on the ballot.

INITIATIVE HISTORY

When the Washington State Constitution was ratified in 1889, it vested all legislative power in the legislature. The constitution did not reserve any authority in the people to enact or repeal laws directly. But around that time, a deep-seated distrust of representative legislative bodies began to grow among the American people in general and Washington labor groups in particular. *State ex rel. Berry v. Superior Court*, 92 Wash. 16, 22, 159 P. 92 (1916). By the early 1900s, the people's distrust for their legislative representatives had developed into a national movement toward establishing the people's right to seek direct legislation through initiatives and to repeal laws through referenda. *Id.*

By the beginning of the 1900s, that movement toward direct legislation had arrived in Washington. Claudius O. Johnson, *The Adoption of the Initiative and Referendum in Washington*, 35 PAC. NW. Q. 291, 295 (1944). Establishing direct legislation in Washington required a constitutional amendment; this in turn required a supermajority of legislators in the house and senate to pass the amendment. WASH. CONST. art. XXIII. To get these votes, community leaders from the Washington State Grange and other labor organizations began demanding that individual legislative

5

candidates pledge their support for direct legislation and constitutional amendments by the people and for a constitutional amendment securing those rights. *Id.*

After more than a decade, these groups gained partial success: they secured direct legislative powers in Washington, but not constitutional amendment powers. The critical years were 1911-12. In 1911, an informal coalition of labor leaders from the Washington State Grange, the Direct Legislation League of Washington, the Washington State Federation of Labor, and the Farmers' Union banded together to coordinate and intensify their efforts to place direct legislative and constitutional amendment powers in the people. Johnson, *supra*, at 299; *For Direct Legislation*, SEMI-WKLY. ABERDEEN HERALD, Sept. 28, 1911, at 1; Henry K. Ensley, Operation of the Initiative and Referendum in the State of Washington 7 (1938) (unpublished M.A.P.S. thesis, State College of Washington) (on file with the Washington State Library). During the 1911 legislative session, the coalition "met each evening [in Olympia,] . . . planned its work, reported on duties assigned, [and] centralized efforts where needed." *Report of the Joint Legislative Committee Covering Session of 1911*, THE LAB. J., Jan. 19, 1912, at 1. The coalition sought the recall of judges; the direct election of delegates to the national convention; the direct election of United States senators; the passage of an efficient corrupt practices act; the right of the people to seek constitutional amendments through direct legislation; and most relevant here, the initiative, referendum, and recall powers. *For Direct Legislation, supra.*

The coalition failed to persuade the legislature to enact a direct constitutional amendment process. But the coalition mostly succeeded in persuading the legislature to give the people a right to initiate and repeal statutes. Indeed, the 1911 legislature enacted the coalition-backed direct initiative and referendum bill—House Bill 153—with only a few changes. LAWS OF 1911, ch. 42. The legislature (1) increased by a few percentage points the number of signatures needed before an initiative or referendum could be certified to the people for election, (2) reduced the time within which the legislature was barred from amending or repealing an initiative or referendum "approved by a majority of the electors voting thereon" from four to two years, and (3) added a proviso that before an initiative could become law or a statute could be repealed by referendum, at least one-third of the voters participating in the general election must cast a vote for or against the measure. Johnson, *supra*, at 300; WASH. CONST. art. I, § 1. The coalition "acquiesced in these amendments, believing they were but slightly if at all detrimental to the successful working of the initiative and referendum." *Report of the Joint Legislative Committee, supra.*

The people then ratified House Bill 153, as revised, by popular vote on November 1912. That bill gave the people the authority to initiate and repeal statutes by initiative and referendum.

Since that time, legislative authority in Washington has been vested primarily in the legislature. But the constitution also "reserve[s] to [the people] the power to

propose bills, laws, and to enact or reject the same at the polls, independent of the legislature." WASH. CONST. art. II, § 1. The people can enact laws directly through "initiatives to the people" or indirectly through "initiatives to the legislature." *Id.* § 1(a).

The indirect process provides initiative proponents with three advantages over the direct process: the indirect process allows initiatives to become law sooner; it provides legislative feedback; and it results in two opportunities for the initiative to become law—first, by majority vote of the legislature, and second, if that fails, by majority vote of the people. This case involves that indirect process.

FACTS AND PROCEDURAL HISTORY

A. Proceedings in the Legislature regarding I-940

In 2017, a coalition of Washington residents and organizations concerned about police use of deadly force in Washington formed De-Escalate Washington to promote reform. They developed I-940. In order to get I-940 certified, De-Escalate Washington needed to collect 259,622 valid signatures. Clerk's Papers (CP) at 34. They collected 359,895 signatures. *Id.* After verifying a random sample of those signatures, Secretary of State Kim Wyman determined that the remaining unverified signatures likely contained the requisite number of valid ones. *Id.* She therefore certified I-940 to the legislature on January 23, 2018. *Id.*

8

The constitution sets the rules for how the legislature must proceed after receiving such a certified initiative; the portions that are especially relevant to this case are highlighted below:

> Such initiative measures, whether certified or provisionally certified [by the secretary of state], *shall take precedence over all other measures in the legislature except appropriation bills* and *shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session.* If any such initiative measures shall be enacted by the legislature it shall be subject to the referendum petition, or it may be enacted and referred by the legislature to the people for approval or rejection at the next regular election. If it is rejected or if no action is taken upon it by the legislature before the end of such regular session, the secretary of state shall submit it to the people for approval or rejection at the next ensuing regular general election. *The legislature may reject any measure so proposed by initiative petition and propose a different one dealing with the same subject, and in such event both measures shall be submitted by the secretary of state to the people* for approval or rejection at the next ensuing regular general election. When conflicting measures are submitted to the people the ballots shall be so printed that a voter can express separately by making one cross (X) for each, two preferences, first, as between either measure and neither, and secondly, as between one and the other. If the majority of those voting on the first issue is for neither, both fail, but in that case the votes on the second issue shall nevertheless be carefully counted and made public. If a majority voting on the first issue is for either, then the measure receiving a majority of the votes on the second issue shall be law.

WASH. CONST. art. II, § 1(a) (emphasis and underlining added).

As this quote shows, the constitution authorized the legislature to respond to I-940 in four ways. First, the legislature could have enacted I-940 "without change or amendment . . . before the end of [that] regular session"; in that case, the initiative

9

would become law unless the legislature chose or a sufficient number of residents demanded that the initiative be submitted to the people for a vote. Second, the legislature could have rejected I-940 outright; in that case, the initiative would be placed on the 2018 general ballot. Third, the legislature could have failed to act on I-940; in that case, the inaction would be treated as a rejection, and I-940 would appear on the ballot. Fourth, the legislature could have proposed a different measure dealing with the same subject; in that case, both I-940 and the proposed legislative alternative would appear on the 2018 general ballot in the form specified by the constitution. In sum, unless the legislature enacted I-940 "without change or amendment . . . before the end of [the 2018] regular session," the secretary of state would have to place I-940 on the November 2018 ballot, either by itself or with a legislatively proposed alternative.[3]

Both the house and the senate passed I-940—without change or amendment in the body of that passed bill—on the last day of the general session, March 8, 2018. LAWS OF 2018, ch. 11.

But while I-940 was still pending, the legislature also considered a separate bill—ESHB 3003—that purported to prospectively amend, clarify, and/or

_____

[3] I-940 could also be on the ballot in 2018, even if passed by the legislature "without change or amendment . . . before the end of such regular session," if a sufficient number of people demanded a referendum on it. WASH. CONST. art. II, § 1(a), (b).

supplement parts of I-940, without a vote of the people, if the legislature later enacted I-940.[4] ESHB 3003 was introduced in the house on March 6, 2018, and passed the house on March 7—the day before the house passed I-940. LAWS OF 2018, ch. 10. The senate then passed ESHB 3003 and I-940 the next day, March 8, 2018. *Id.* at chs. 10, 11. The governor signed ESHB 3003 that day, but did not sign I-940 because the constitution does not require gubernatorial action on initiatives.[5] Thus, both ESHB 3003 and I-940 became law on the same day (March 8, 2018), though the legislature acknowledges that ESHB 3003 was enacted first.

The primary issues before this court are whether the legislature's enactment of ESHB 3003 immediately prior to and during the same regular legislative session as I-940 violated article II, section 1(a) of the Washington State Constitution, and if so, what are the consequences.

B. Proceedings in the Trial Court

Tim Eyman and state Senator Mike Padden of the 4th Legislative District challenged the validity of I-940 and ESHB 3003 in Thurston County Superior Court via petition for writ of mandamus. They moved for summary judgment, arguing that

---

[4] ESHB 3003 was a compromise amendment developed by De-Escalate Washington (the proponent of I-940) along with other stakeholders, including law enforcement.

[5] WASH. CONST. art. II, § 1(d) ("The veto power of the governor shall not extend to measures initiated by . . . the people.").

11

the legislature violated article II, section 1(a)'s requirement that initiatives to the legislature be "enacted or rejected" "without change or amendment" "before the end of such regular session" on the ground that the legislature enacted I-940 at the same time as ESHB 3003, and ESHB 3003 was a "change or amendment" to I-940. CP at 82-95. They argued this meant that I-940 was never truly enacted "without change or amendment." They sought the remedy of compelling the secretary of state to place both I-940 and ESHB 3003 on the ballot.

The trial court agreed with Eyman and Padden that the legislature's decision to enact both I-940 and ESHB 3003 violated the constitution but for different reasons. It ruled that ESHB 3003 was not validly enacted because the constitution requires initiatives to "take precedence" over other legislation, and it interpreted that language to mean that I-940 had to be enacted or rejected first, before ESHB 3003 was enacted. Verbatim Report of Proceedings (Apr. 20, 2018) (VRP) at 58. As for I-940, the trial court acknowledged that a majority of the legislature passed I-940 "without change or amendment" but questioned whether those same legislators would have voted for I-940 if they had voted on it first, before ESHB 3003. The trial court reasoned, "What we know is when the legislature voted on I-940, every legislator knew that the substantive amendments contained [in] ESHB 3003 had already been approved by both houses and signed by the governor. Votes held in reverse could have resulted in something different." *Id.* at 61. The court said, "If there had been no ESHB 3003,

12

would there have been enough votes in one or both houses to pass I-940 as written? Would it then have—if it had passed both houses, would the governor have signed it as law?" *Id.* at 60. Given this uncertainty about what legislators might have done, the trial court concluded that the legislature did not really pass I-940.

The trial court therefore issued a writ of mandamus compelling the secretary of state to place I-940—by itself—on the November 2018 ballot. CP at 253. The trial court rejected Eyman and Padden's arguments that ESHB 3003 should appear as an alternative measure on the ballot along with I-940. *Id.* The court reasoned that the legislature did not propose ESHB 3003 as an alternative measure and ESHB 3003 could not be listed on the ballot as a stand-alone provision, either—it is incomplete and written only as a conditional, prospective amendment to I-940. VRP at 62. ESHB 3003 states that it "takes effect . . . only if . . . (Initiative Measure No. 940) . . . is passed" and that it "is void in its entirety" "[i]f the initiative is not approved" by the legislature. LAWS OF 2018, ch. 10, § 10. The trial court also did not rewrite ESHB 3003 into a viable stand-alone alternative itself.

C. Proceedings in the Washington Supreme Court

The legislature and De-Escalate Washington appealed the trial court's ruling directly to this court. Lieutenant Governor Cyrus Habib moved to intervene, raising arguments similar to those of the legislature and De-Escalate Washington in defense

of I-940 and ESHB 3003.[6] This court's commissioner granted the lieutenant governor's motion to intervene.

Eyman and Padden cross appealed from the trial court's refusal to compel the secretary of state to place ESHB 3003 on the November 2018 ballot as an alternative measure to I-940.

The secretary of state did not appeal. She has indicated, however, that she needs a ruling by August 31, 2018, to ensure that ballots are timely delivered to military personnel overseas.

We retained this case for direct review, granted the parties' emergency motion for accelerated review, and accelerated the date for oral argument.

ISSUES

A. Was I-940 validly enacted and constitutional? (Short answers: yes and yes.)

B. Was ESHB 3003 validly enacted and constitutional? (Short answers: yes, the enrolled bill doctrine bars this court from overruling the legislature's certification that ESHB 3003 was enacted in a procedurally regular manner; but no, it is unconstitutional because it violates article II, section 1(a)).[7]

---

[6] The lieutenant governor intervened in this appeal because the issues in this case arguably affect his duties as the president of the senate. WASH. CONST. art. II, § 10.

[7] Our colleagues object to the way we frame the issues because asking whether I-940 was "validly enacted" as a first step highlights the problem with their approach, i.e., that they compel the secretary of state to place I-940 on the ballot despite the fact that it fits squarely within the definition of an enacted enrolled bill. Dissent in part (Madsen, J.) at 2; Dissent (Stephens, J.) at 5 n.3. But we frame the issues that way because the constitution demands that we do so. The enrolled bill doctrine is a constitutional doctrine. It is based on the constitution's implied separation of powers and the judiciary's respect for the

14

STANDARD OF REVIEW

This case concerns the interpretation of the constitutional requirement that an initiative to the legislature "shall" be enacted (or rejected) "without change or amendment . . . before the end of such regular session." WASH. CONST. art. II, § 1(a). Constitutional interpretation [is] a question of law that we review de novo. *Wash. Citizens Action of Wash. v. State*, 162 Wn.2d 142, 151, 171 P.3d 486 (2007) (citing *Pierce County v. State*, 150 Wn.2d 422, 429, 78 P.3d 640 (2003)).

As discussed in the above initiative history section, the initiative power "is nearly as old as our constitution itself, [is] deeply ingrained in our state's history, and [is] widely revered as a powerful check and balance on the other branches of government." *Coppernoll v. Reed*, 155 Wn.2d 290, 296-97, 119 P.3d 318 (2005). Because of this, we have repeatedly affirmed the judiciary's responsibility to protect "this potent vestige" of Washington's progressive past from encroachment or interference. *Id.* at 297 (citing *In re Estate of Thompson*, 103 Wn.2d 292, 294-95, 692 P.2d 807 (1984)). In fulfillment of that duty, "this court has consistently applied

---

legislature as a coequal branch of government. It means that this court cannot invalidate a passed, "enrolled" bill just because we disagree with it or think the legislature should have passed it in a different manner. For that reason, we cannot reject the legislature's certification that I-940 was duly enacted; an initiative goes to the ballot only "[i]f it is rejected or if no action is taken upon it by the legislature before the end of [the] regular session." WASH. CONST. art. II, § 1(a).

the rule that such provisions will be liberally construed to the end that the right of initiative be facilitated." *Thompson*, 103 Wn.2d at 294-95 (citing *Sudduth v. Chapman*, 88 Wn.2d 247, 251, 558 P.2d 806, 559 P.2d 1351 (1977)); *see State ex rel. Evich v. Superior Court*, 188 Wash. 19, 27-28, 61 P.2d 143 (1936) (quoting *State ex rel. Case v. Superior Court*, 81 Wash. 623, 632 143 P. 461 (1914)).

ANALYSIS

A. The Legislature Enacted I-940 "Without Change or Amendment . . . before the End of [the] Regular Session" in Accordance with the Procedure Specified in Article II, Section 1(a); For That Reason, This Court Cannot Compel the Secretary of State to Place It On the Ballot

1. *I-940 Was Enacted "Without Change or Amendment . . . before the End of [the] Regular Session"*

If the legislature enacts an initiative "without change or amendment . . . before the end of [the] regular session," that initiative becomes law—unless the legislature refers it to the people for a vote or a sufficient number of people demand that it go to the voters for a referendum. WASH. CONST. art. II, § 1(a), (b).

In this case, the legislature did not refer I-940 to the people, and the people did not demand the right to vote on I-940 before the time for seeking such a referendum expired, that is, before June 7, 2018. CP at 86; WASH. CONST. art. II, § 1(c) (setting the deadline for seeking a voter referendum at "ninety days after the adjournment of the session at which [the act] was enacted"). Instead, the legislature "enacted" I-940

as signed by the 359,895 voters during the signature gathering stage and certified by the secretary of state.

The speaker of the house and the lieutenant governor as president of the senate certified that I-940 was enacted "without change or amendment." Opening Br. of the Wash. State Legislature at 26 (observing that "constitutional majorities in both houses voted for I-940"); Opening Br. of Cyrus Habib at 2 (noting that "a majority of both chambers voted in favor of I-940, and the Lieutenant Governor and Speaker of the House properly certified its passage"). Indeed, the official session law for I-940 confirms that the legislature enacted I-940 as proposed by the initiative proponent, De-Escalate Washington. LAWS OF 2018, ch. 10, § 4(1).

The question here is whether I-940 was really enacted "without change or amendment . . . before the end of [the] regular session," given that the legislature enacted a separate bill, ESHB 3003, right before it enacted I-940. In other words, the question for us is whether ESHB 3003 alters the legislative certification that I-940 was enacted without change or amendment.[8] As discussed below, ESHB 3003 does not alter that certification.

---

[8] The attorney general's 1971 opinion does not answer these questions. 1971 Op. Att'y Gen. No. 5. That opinion addressed only whether the legislature may "make any changes *in the text of an initiative* to the legislature without, thereby, being required to submit its altered version of the initiative to the people as an alternative for the original initiative." *Id.* at 2 (emphasis added). Everyone (including the legislature) agrees that an in-text change is not allowed. But we are not dealing here with an in-text amendment. We

## 2. *Under the Enrolled Bill Doctrine, ESHB 3003 Does Not Alter That Conclusion*

Eyman and Padden argue that I-940 was not enacted "without change or amendment" because a separate bill, ESHB 3003, titled "AN ACT Relating to law enforcement; amending [creating and amending statutes and provisions of I-940]," LAWS OF 2018, ch. 10, purported to change and amend I-940. Br. of Resp'ts & Cross-Appellants at 22-24.

As discussed immediately above, I-940 itself was passed as proposed. Eyman and Padden are really arguing that we should look behind the certification by the speaker of the house and the lieutenant governor, acting in his capacity as president of the senate, that I-940 passed as proposed.

The enrolled bill doctrine bars this court from doing that. The constitution forbids this court from disregarding enacted statutes without first declaring them invalid or unconstitutional. This means that if an enrolled bill is "fair on its face," it is "impervious to collateral attack." *State ex rel. Wash. Toll Bridge Auth. v. Yelle*, 61 Wn.2d 28, 34, 377 P.2d 466 (1962). "'[T]he courts will make no investigation of the antecedent history connected with its passage, except as such an investigation may be necessary in case of ambiguity in the bill for the purpose of determining the

---

are dealing with a completely separate bill. The principle that an in-text change is not allowed thus has absolutely no bearing on this case.

18

legislative intent.'" *Id.* (quoting *State ex rel. Dunbar v. State Bd. of Equalization*, 140 Wash. 433, 443, 249 P. 966 (1926)).

The enrolled bill doctrine serves as a constitutional backstop that prevents the judiciary from overstepping its role. The doctrine is rooted in the constitutional separation of powers, as well as "respect for the legislature's role as a coequal branch of government 'in no way inferior to the judicial branch.'" *Brown v. Owen*, 165 Wn.2d 706, 723, 206 P.3d 310 (2009) (quoting *Wash. State Grange v. Locke*, 153 Wn.2d 475, 500, 105 P.3d 9 (2005)). Like the enrolled bill doctrine, the principle of separation of powers ensures that the fundamental functions of each coordinate branch of government remain inviolate. *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994). Separation of powers "recognizes that each branch of government has its own appropriate sphere of activity," *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 504, 198 P.3d 1021 (2009), and that one branch of government cannot "'threaten[] the independence or integrity or invade[] the prerogatives of another.'" *Carrick*, 125 Wn.2d at 135 (quoting *Zylstra v. Piva*, 85 Wn.2d 743, 750, 539 P.2d 823 (1975)). Thus, once a bill has been certified by the legislature as having been passed, that certification is "'conclusive upon each of the other [branches of government],'" including the judiciary. *Brown*, 165 Wn.2d at 723 (quoting *State ex rel. Reed v. Jones*, 6 Wash. 452, 461-62, 34 P. 201 (1893)).

The trial court violated the enrolled bill doctrine by invalidating I-940 based on the fact that ESHB 3003's passage preceded I-940's passage and the possibility that some legislators might not have voted for I-940 if they had known the court would invalidate the separate bill, ESHB 3003. VRP at 60-61. The enrolled bill doctrine bars this court from investigating whether individual legislators were deceived into voting for an enrolled bill as a basis for invalidating that bill. *Wash. Toll Bridge Auth.*, 61 Wn.2d at 33-34. I would therefore reverse the trial court's order invalidating I-940 and directing the secretary of state to place I-940 on the November 2018 ballot. (Five members of this court, however, would not; as a result, the superior court's decision to issue a writ of mandamus compelling placement of I-940 on the November ballot is affirmed.)

### 3. Any Other Conclusion Would Undermine the Purpose of Article II, Section 1(a), Which Is To Protect Initiatives

This conclusion is also compelled by the purpose of article II, section 1(a): the protection of initiatives. Article II, section 1(a) protects initiatives by restricting the legislature's ability to modify them. If an initiative is certified to the legislature for consideration, the legislature must enact or reject the initiative "without change or amendment" or else the initiative must go to the voters for decision. WASH. CONST. art. II, § 1(a). If the initiative is approved by the voters, then the legislature is barred from amending or repealing the initiative for two years (absent a supermajority).

WASH. CONST. art. II § 1(c). Article II, section 1 was clearly intended to ensure that initiatives are voted on as presented. Both the legislature and the lieutenant governor certified that I-940 passed as presented.

The trial court's decision to invalidate I-940 despite the fact that, on its face, it appears to have been validly enacted "without change or amendment," undermines that constitutional purpose. It also violates our case law: our precedent establishes that we have a duty to "liberally" construe article II, section 1 "to the end that the right of initiative be facilitated." *Thompson*, 103 Wn.2d at 294-95.

*4. Conclusion as to the Validity of I-940*

I would therefore reverse the trial court and hold that I-940 was validly enacted, consistent with the enrolled bill doctrine and with our duty to liberally construe article II, section 1 to facilitate the people's initiative power. However, a majority of this court disagrees. For that reason, the court affirms the trial court's decision to issue a writ of mandamus to compel the secretary of state to place I-940 on the November ballot.

B. The Enrolled Bill Doctrine Bars This Court from Questioning the Legislature's Decision That ESHB 3003 Was Validly Enacted, but ESHB 3003 Violates Article II, Section 1(a) so It Is Constitutionally Invalid; For That Reason, This Court Cannot Compel the Secretary of State To Put It on the Ballot

The next question is whether ESHB 3003 is constitutionally valid. We conclude that under the enrolled bill doctrine discussed above, ESHB 3003 was

validly enacted by a majority vote in the house and senate. But under our controlling precedent, ESHB 3003 itself violates article II, section 1, which drastically limits the legislature's ability to amend initiatives that the people have proposed.

*1. ESHB 3003 Violates the Express Constitutional Bar on Amendments "Before the End of Such Regular Session" of Article II, Section 1(a)*

We start with the language of the constitution. Article II, Section 1(a) says that when the legislature receives an initiative, it shall be "enacted or rejected without change or amendment . . . before the end of such regular session." Under the last antecedent rule of statutory construction, courts construe the final qualifying words and phrases in a sentence to refer to the last antecedent unless a contrary intent appears in the statute. *Berrocal v. Fernandez*, 155 Wn.2d 585, 593, 121 P.3d 82 (2005) (quoting *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 781, 903 P.2d 443 (1995)). "'The last antecedent is the last word, phrase or clause that can be made an antecedent without impairing the meaning of the sentence.'" *Id.* (emphasis omitted) (quoting *In re Estate of Kurtzman*, 65 Wn.2d 260, 264, 396 P.2d 786 (1964)).

Applying the last antecedent rule, the final clause, "before the end of such regular session," certainly applies to the immediate antecedent—"without change or amendment."

Indeed, the parties all agree that that last clause, "before the end of such regular session," applies to the first clause in that sentence—"shall . . . enact[] or reject[]." But that final modifying clause can't possibly apply to a clause two antecedents back, and skip over the "without change or amendment" clause in between. Thus, textually, article II, section 1(a) requires the legislature to enact or reject an initiative "without change or amendment . . . before the end of such regular session."[9]

It is plain from the face of I-940 and ESHB 3003 that ESHB 3003 was a change or amendment done before the end of that regular legislative session in which I-940 was enacted. LAWS OF 2018, chs. 11 (I-940 was enacted during the "2018 Regular Session"), 10 (ESHB 3003 was enacted during the "2018 Regular Session"). The enrolled bill doctrine allows us to rely on those documents. I would hold that ESHB 3003 violates article II, section 1(a), and I would invalidate it in its entirety.

The legislature argues that I-940 was not amended before the end of the session because ESHB 3003 did not become *effective* until after the referendum period expired. I disagree. There is no support for the notion that an amendment is enacted

---

[9] This interpretation is supported further by other language in article II, section 1(a) and (c). Section 1(a) provides that enacted initiatives "shall be subject to the referendum petition." This means that an enacted initiative cannot become effective until after the referendum period has expired. Section 1(c) defines the referendum period as "ninety days *after the adjournment of the session at which [the act] was enacted.*" (Emphasis added.) If an initiative cannot become effective until 90 days after the end of the session, it makes sense that the initiative cannot be amended until at least the end of that session.

on the date that it becomes effective, rather than on the date on which it was enacted. Indeed, there is support for the opposite rule: the rule that an amendment is enacted on the date that it is enacted.[10]

> ### 2. If There Were Any Ambiguity about the Meaning of That Plain Language, This Court Would Interpret It in Favor of Preserving the Framework of Article II, Section 1(a) and (c)

As mentioned above, article II, section 1 restricts the legislature's authority to enact, amend, defer, and reject legislation in "explicit" ways. *Dep't of Revenue v. Hoppe*, 82 Wn.2d 549, 557, 512 P.2d 1094 (1973). First, the constitution states that unless the legislature enacts the initiative as is "*without change or amendment . . . before the end of [the] regular session*," the initiative must go to the voters. WASH. CONST. art. II, § 1(a) (emphasis added). Second, the constitution states that legislative consideration of the initiative must "*take precedence*" over other legislative matters except for appropriation bills. *Id.* (emphasis added). Third, the constitution states that if the legislature enacts the initiative, the initiative "*shall be subject to the*

---

[10] We treat the date of enactment as the date of enactment for related purposes. For example, we have addressed the somewhat similar issue of whether the two-year bar against legislative amendments to initiatives approved by the people begins with the date of enactment or begins with the effective date. We held that because the two-year bar applies "'following such *enactment* [of the initiative],'" that language means the date of enactment controls. *State v. Gibbons*, 118 Wash. 171, 176-77, 203 P. 390 (1922) (quoting WASH. CONST. art. II, § 1(c)). The bar on changes to amendments before the end of the regular legislative session also refers to the "enact[ment]" of initiatives. It states the legislature must "enact[] . . . without change or amendment . . . before the end of such regular session." WASH. CONST. art. II, § 1(a). That language suggests that no companion bill amending the initiative can be enacted during the same session as the initiative.

24

*referendum petition." Id.* (emphasis added). Fourth, the constitution states that if the legislature rejects the initiative, the voters have an absolute right to vote on the initiative, *id.*, and if the voters approve the initiative, then the legislature is *prohibited from "amend[ing] or repeal[ing]" that initiative "within a period of two years following such enactment"* absent a supermajority vote in the house and senate. WASH. CONST. art. II, § 1(c) (emphasis added).

These constitutional provisions secure for the people the right to vote on initiatives presented to the legislature if the legislature does not enact the initiative as certified within that regular legislative session. Should the legislature enact the initiative, then that legislative body is bound by that enactment. If the legislature could amend initiatives immediately upon enactment, this carefully drawn balance of legislative power between the legislature and the people would be destroyed. Such an interpretation would therefore be inconsistent with our duty to "liberally construe[]" article II, section 1(a) "to the end that the right of initiative be facilitated." *Thompson*, 103 Wn.2d at 294-95. The people have the right to vote on initiatives that are not enacted as certified without change or amendment by the legislature by the end of the regular legislative session.

### 3. We Reject the Legislature's Argument That It Can Amend Initiatives Anytime It Wants Unless Its Amendments Show a Conscious, Subjective, Intent To Deceive the People; That Test Is Not Supported by Lowry, and It Is Inconsistent with Other Precedent from This Court

#### a. The Constitution Does Not Tolerate Clever Legislation Intended To Undermine Its Structure

The legislature argues that despite this constitutional language and structure, it has the power to amend initiatives at any time unless those amendments constitute a "'palpable attempt at dissimulation'"; it extrapolates this test from *Washington State Legislature v. Lowry*, 131 Wn.2d 309, 931 P.2d 885 (1997) (quoting *State ex rel. Hamilton v. Martin*, 173 Wash. 249, 257, 23 P.2d 1 (1933)).

Basically, the legislature argues that *Lowry* compels us to use a single, very restrictive test for determining whether it has infringed on the authority of another branch, i.e., the people. The legislature argues that under that test, we must affirm legislative action "'unless [such action] is obviously designed to circumvent [another branch's constitutional powers] and is a "palpable attempt at dissimulation."'" Opening Br. of Wash. State Legislature at 16 (quoting *Wash. State Legislature v. State*, 139 Wn.2d 129, 140, 985 P.2d 353 (1999) (quoting *Lowry*, 131 Wn.2d at 320-21)). The legislature treats this as a subjective inquiry about the intent of individual legislators. The legislature refers to this as the "*Lowry* test." *Id.* at 17.

The issue of whether the legislature can evade the constitutional requirement that it submit the initiatives that it does not like to the people by enacting those

26

initiatives as certified and then immediately amending them (either before or after) is a question of first impression in this state. No other state has addressed this precise situation either.[11] But we have invalidated similar attempts by one branch of government to infringe the power of another branch through clever legislation or creative conditional initiatives. And we have not required a showing that the infringement be a subjective, conscious attempt at "dissimulation" by specific legislators before doing so.

For example, in *Lee v. State*, we considered a creative attempt by the people to attain a *constitutional* amendment through their initiative power even though the people's initiative power is limited to *statutory* lawmaking. 185 Wn.2d 608, 374 P.3d 157 (2016). The Washington Constitution, however, limits the initiative power to enactments or amendments (not constitutional changes). The initiative proponent therefore characterized the proposal as a statutory tax cut. As a practical matter, however, that tax cut served as a coercive measure to force the legislature to enact a constitutional amendment on tax reform or else suffer a crippling $1.4 billion-per-year tax cut. This court ruled that such a "'do this or else' structure . . . establishes a

---

[11] Only seven other jurisdictions have an indirect initiative process like ours, where the people can propose statutory initiatives first to the legislature and then to the people if the legislature does not enact them. Those jurisdictions are Maine, Massachusetts, Michigan, Nevada, Ohio, Utah, and the United States Virgin Islands. In contrast, three jurisdictions (Arizona, Alaska, and Wyoming) have a legislative override, where the legislature can block a people's initiative by enacting its own competing legislation.

new process for amending the constitution" not "contemplated by the constitution." *Id.* at 629. We therefore invalidated the initiative as unconstitutional. *Id.* We did not require proof of intentional, subjective "dissimulation" to reach that conclusion.

The Massachusetts Supreme Judicial Court struck down a similar "do this or else" type of appropriations legislation in a case in which the hostile actor was the legislature (not the people). *Opinion of Justices to House of Representatives*, 384 Mass. 828, 832, 428 N.E.2d 117 (1981). That court explained that such coercive use of appropriation powers is impermissible: "if through the appropriation process, the Legislature were able to compel the Governor either to accept general legislation or to risk forfeiture of appropriations for a department of government, the careful balances of powers . . . would be destroyed, and the fundamental principle of separation of powers . . . would be substantially undermined." *Id.* (citing *Opinion of Justices to House of Representatives*, 384 Mass. 820, 825, 425 N.E.2d 750 (1981))

In fact, in *Lowry* itself, the case from which the legislature takes its proposed test, this court took a similar path: we focused on the effect the legislative act had on the constitutional division of legislative power rather than on any subjective intent to thwart the constitution. In *Lowry*, we addressed the constitutionality of a different coercive tactic: the legislature's decision to use hostile formatting to evade the governor's power to veto legislation. 131 Wn.2d at 320-32. In Washington, our constitution limits the governor's veto power to "entire section[s]" of a bill (except

28

for appropriation items). WASH. CONST. art. III, § 12. The legislature sought to limit the likelihood that the governor would exercise his veto power by combining all of its legislative provisions into a single section with each subsection repealing a specific statute even though the statutes were not necessarily interrelated. Thus, in order to save one specific statute, the governor would have had to veto the entire section, even if he agreed with the legislature that the other statutes should be repealed. We held that such clever formatting was an unconstitutional abuse of the legislative power because it infringed on the veto power of the governor—even though the legislature technically did not violate any specific language in the constitution. We explained that while we would ordinarily defer to the legislature's designation of separate sections in a bill, we would not do so when that designation clearly undermines the powers of a coordinate branch of government. *Lowry*, 131 Wn.2d at 320-32. To be sure, we characterized the legislature's action as a "'palpable attempt at dissimulation.'" *Id.* at 320 (quoting *State ex rel. Hamilton*, 173 Wash. at 257). But, in practice, we did not demand proof that the legislators harbored individual, subjective animosity or the desire to deceive. We applied a legal analysis and ruled that the legislature's actions were inconsistent with the constitutional balance of legislative power between the legislature and the governor.

Applying a similar analysis, the Massachusetts Supreme Judicial Court struck down a clever attempt by the Massachusetts Legislature to curtail the people's

initiative power. *Buckley v. Secretary of Commonwealth*, 371 Mass. 195, 355 N.E.2d 806 (1976). Massachusetts, like Washington, has an indirect initiative process that allows the people to present initiatives to the legislature for approval; if the legislature enacts, that enactment avoids the need for a popular vote on the measure. *Id.* at 199-200. The Massachusetts Legislature, like the Washington Legislature, can present the voters with its own "substitute" measure, along with the original initiative, to choose between. *Id.* But in Massachusetts, unlike in Washington, if the substitute measure presented by the Massachusetts Legislature wins, then the people are barred from presenting another initiative on that topic for six years. *Id.* In *Buckley*, the Massachusetts Legislature sought to defeat the people's initiative for reform of firearm ownership laws and to obstruct the people's ability to present further initiatives on that topic for six years. It did so by presenting a "substitute" bill that addressed firearms only tangentially. *Id.* at 197. Unlike the people's initiative, which essentially banned private firearm ownership, the legislature's "substitute" bill established firearm sentencing enhancements for certain serious crimes. *Id.* The substitute bill did not address firearm ownership. The Massachusetts Supreme Judicial Court held that while the Massachusetts Constitution did not expressly prohibit the legislature's acts, "[t]he language and structure of [the constitution] thus demand that a legislative substitute for an initiative petition must offer a true alternative and may not constitute a second approach which departs from the basic

purpose of the initiative petition." *Id.* at 200. To hold otherwise, the court explained, would "countenance the [debilitation] of the initiative petition," "fly in the face of the evident intent of the distinguished members of the Constitutional Convention," and "interfere with the ability of the people to declare their position on the basic question originally proposed" by the initiative. *Id.* at 202-03.

In this case, no one is claiming that the legislature acted in bad faith to invalidate I-940. VRP at 59. But under the rule of *Lee*, *Lowry*, and these persuasive out-of-state cases, the legislature has impermissibly circumvented the balance of power between the legislature and the people that is built into the constitution. The legislature did so by enacting I-940 "without change or amendment," yet amending it immediately as a practical matter via passage of an almost contemporaneous bill. Regardless of whether the legislature's actions constitute a conscious, intentional, "palpable attempt at dissimulation," they are constitutionally impermissible under our case law.

It does not matter that the proponent of I-940 (De-Escalate Washington) acquiesced in ESHB 3003. The right to vote on initiatives presented as is, "without change or amendment," did not belong to De-Escalate Washington. It belonged to the individuals who supported and signed I-940 and to the voting public. The legislature deprived them of their constitutional right under article II, section 1(a) to

31

compel the legislature to enact or reject I-940 as certified, regardless of whether it satisfies what the legislature calls the "*Lowry* test."

### b. The Legislature Acknowledges That Its Restrictive "*Lowry* Test" Is Not Supported by the *Lowry* Decision Itself

The legislature itself seems to acknowledge that there is more to the constitutional analysis here than just its intent-based "*Lowry* test." The legislature acknowledges that even if the constitution does not contain an express restriction on its ability to amend an initiative once enacted by it, the constitution contains an implied principle that it cannot legislate in a manner that infringes on the legislative powers of a coordinate branch of government—here, the people.[12] Opening Br. of Wash. State Legislature at 12. I agree with the legislature that our constitution contains an implicit principle protecting the constitutional allocation of legislative powers from encroachment.

*Lowry* did not purport to overrule that constitutional structure by reference to the legislature's "palpable attempt at dissimulation." In *Lowry*, we said that the "'palpable attempt at dissimulation'" test is satisfied if "we discern legislative drafting that so alters the natural sequences and divisions of a bill [so as] to

---

[12] When acting under their initiative and referendum powers, the people are acting as a fourth branch of government. *Wash. State Farm Bureau Fed'n v. Reed*, 154 Wn.2d 668, 676, 115 P.3d 301 (2005) (explaining "article II, section 1 provides a 'fourth element [to the three branches of government], the people, reserving the right to assert its will over the legislative department of the government'" (alteration in original) (quoting *State ex rel. Brislawn v. Meath*, 84 Wash. 302, 317-18, 147 P.11 (1915))).

32

circumvent the Governor's veto power . . . ." *Lowry*, 131 Wn.2d at 320 (quoting *State ex rel. Hamilton*, 173 Wash. at 257). Thus, the real *Lowry* test simply reflects the implied constitutional principle that one branch of government cannot infringe on the legislative powers secured by the constitution to the other coordinate branches through creative or clever legislation. Indeed, the legislature acknowledges that the real *Lowry* test is not so stringent in other parts of its brief. *E.g.*, Opening Br. of Wash. State Legislature at 16, 21. As the legislature recognizes, the real *Lowry* test is satisfied if the legislature acted to "'substantially deprive[] [the electorate of] the fair opportunity to exercise its constitutional prerogatives as to legislation.'" *Id.* at 21 (alterations in original) (quoting *Lowry*, 131 Wn.2d at 320).

The legislature, however, claims that it did not violate the real *Lowry* test. *Id.* I disagree. The legislature's decision to pass ESHB 3003 deprived the voters and the individuals who signed the petition in favor of I-940 of their right under article II, section 1(a) to have the legislature enact I-940 as certified or send it to the ballot for a vote.[13]

---

[13] The trial court held that ESHB 3003 violated article II, section 1(a)'s "takes precedence" language. VRP at 58. Recall that section 1(a) states that when an initiative is certified to the legislature for approval or rejection, the initiative . . . *shall take precedence over all other measures in the legislature except appropriation bills* and shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session." WASH. CONST. art. II, § 1(a) (emphasis added). The trial court interpreted that "take precedence" language to mean that the legislature must act on the initiative before enacting legislation on topics covered by the initiative. VRP at 58. Because ESHB 3003

### 4. Conclusion as to the Validity of ESHB 3003

I would hold that ESHB 3003 was validly enacted but is unconstitutional. The express language of article II, section 1(a) states that I-940 must be "either enacted or rejected without change or amendment by the legislature before the end of [the] regular session." That language carefully allocates powers between the legislature and the people. The legislature's decision to pass a separate bill that purported to conditionally and prospectively amend the people's initiative during the regular

---

was enacted before I-904 (albeit in the same day) and both cover the same topic of police reform, the trial court determined that ESHB 3003 was invalid. Because I invalidate ESHB 3003 based on different language in article II, section 1(a), and the allocation of powers it creates, I do not address whether the "take[s] precedence" language commands the same result.

In addition, the legislature contends that it has plenary power to amend I-940 *at any time*, as long as the amendments do not take effect until after the period for seeking a referendum has expired. Opening Br. of Wash. State Legislature at 2 ("There is no express Constitutional provision forbidding [ESHB 3003's] enactment, and thus it was a proper exercise of the Legislature's plenary power."); *accord* 1971 Op. Att'y Gen. No. 5, at 11-13 (questions 9 and 10). This argument appears to be based on the fact that I-940 was enacted by the legislature without referral to an election and, hence, might not be subject to article II, section 1(c)'s two-year bar on amending (absent a supermajority) legislation that was "approved by a majority of the electors voting thereon." In contrast, Eyman and Padden contend that "[i]f the legislature adopted I-940 without change, then . . . [I-940] cannot be amended within the next two years except by a vote of two thirds of both houses of the legislature." CP at 91 (citing WASH. CONST. art. II, § 1(c)). Because I invalidate ESHB 3003 based on the language of article II, section 1(a) and its allocation of powers between the legislature and the people, I do not address the applicability of section 1(c)'s two-year bar on initiatives enacted by the legislature either.

legislative session in which that initiative passed violates article II, section 1(a)'s express language and the implied allocation of legislative power that it creates.

CONCLUSION

A majority of this court agrees that ESHB 3003 is void and unenforceable and, hence, that we cannot compel the secretary of state to place it on the ballot. I believe that the legislature properly and validly enacted I-940; that I-940 complies with article II, section 1(a); and hence, that this court lacks the power to compel the secretary of state to place I-940 on the ballot. A majority of this court, however, disagrees.

As a result, a majority of this court affirms the superior court's decision to issue a writ of mandamus compelling the secretary of state to place I-940 on the ballot.

No. 95749-5

WE CONCUR:

_____          _____ George McCloud, J.

_____          _____ Wiggins, J.

_____          Gonzalez, J.

_____          _____ Yu, J.

36

No. 95749-5

YU, J. (concurring) — I concur in the lead opinion by Justice Gordon

McCloud and write solely to express my unease at the end result of this court's

split decision. A lawful initiative from the people was presented to the legislature.

It was adopted and enacted by the legislature without amendment. No referendum

was filed. There is no basis for this court to retract it.

Justice Madsen's solution to the dilemma created by the legislature is to

send Initiative 940 (I-940) back to the people for another vote, but on what

authority? Without doubt, the legislature's effort to amend I-940 is prohibited, but

the facts here are that I-940 was not rejected or amended. Meanwhile, Justice

Stephens' solution is seemingly just to wash our hands of it all and put everything

to the voters.

While there is some appeal to these simplistic solutions, they damage our

jurisprudence, undermine respect for the separation of powers, and empower

professional initiative peddlers selling governance by populism in place of elected representation. Notwithstanding the cover of populism, a careful reading of these opinions actually exposes unconstitutional judicial meddling rather than progressive populism.

Contrary to the opinions of Justices Madsen and Stephens, this court does not have the authority to retract a validly enacted law without first declaring it invalid or unconstitutional. Holding otherwise suggests that this court may now intervene in the procedures of the legislature and interfere with the constitutional right of the people to enact valid law through initiatives to the legislature. I strongly disagree with this inappropriate expansion of judicial power. The solutions proffered by Justices Madsen and Stephens violate the separation of powers doctrine, and the precedent set by our split opinion in this case presents worrisome, long-ranging consequences for this state.

## ANALYSIS

As discussed in the lead opinion by Justice Gordon McCloud, an honest adherence to the separation of powers doctrine limits this court's ability to interfere in the independence and integrity of another coequal branch of government. *State v. Gresham*, 173 Wn.2d 405, 428, 269 P.3d 207 (2012). This court's check on the legislature is generally limited to interpreting the legislature's acts and considering their constitutionality. *State ex rel. Daschbach v. Meyers*, 38 Wn.2d 330, 332, 229

2

P.2d 506 (1951). Expanding this check, as Justices Madsen and Stephens would

have us do, is an "'improper and destructive exercise[ ]'" of the court's authority.

*Brown v. Owen*, 165 Wn.2d 706, 719, 206 P.3d 310 (2009) (quoting *In re Salary of*

*Juvenile Dir.*, 87 Wn.2d 232, 243, 552 P.2d 163 (1976)).

To ensure that the judicial branch does not improperly interfere with the

lawmaking function of the legislative branch, we have, until today, consistently

adhered to the enrolled bill doctrine. The enrolled bill doctrine long predates our

federal constitution and was firmly upheld by the United States Supreme Court in

1892. In *Field v. Clark*, importers challenged an 1890 tariff act on the grounds that

the act was not validly passed. 143 U.S. 649, 665-66, 12 S. Ct. 495, 36 L. Ed. 294

(1892). Though the petitioner brought a plausible accusation that the legislature

had not followed procedural requirements set by the Constitution, the Court

rejected the claim, holding that despite the potential defects in its passage, a

certified enrolled bill is "complete and unimpeachable." *Id.* at 672. The Court

warned:

> The evils that may result from the recognition of the principle that an
> enrolled act . . . is conclusive evidence that it was passed by congress,
> according to the forms of the constitution, would be far less than those that
> would certainly result from a rule making the validity of congressional
> enactments depend upon the [internal procedure of legislative actors].

*Id.* at 673.

3

Only 1 year after *Field*, the Washington Supreme Court affirmed the

enrolled bill doctrine in state jurisprudence when it soundly rejected a claim that a

bond was invalid because "constitutional requirements had not been observed by

the legislature in its passage." *State ex rel. Reed v. Jones*, 6 Wash. 452, 453, 34 P.

201 (1893). Like the United States Supreme Court, this court recognized the

disastrous consequences of judicial meddling into the procedures behind validly

enacted laws. If such an approach were used,

> before the courts can find that the bill has become a law, they must look and
> see that all the steps required by the constitution to constitute it such have
> been observed by the legislature. Such a construction given to the enrolled
> act would render it practically impossible for the courts even to determine
> what was the law.

*Id.* at 456. Rejecting such consequences and embracing the enrolled bill doctrine,

this court held that "[w]hat constitutes the statutory law of a state must necessarily

be an absolute proposition, and not simply a prima facie one." *Id.* at 458. For 125

years, this court has repeatedly upheld the critical importance of the enrolled bill

doctrine. *See Brown*, 165 Wn.2d at 723-24; *Wash. State Grange v. Locke*, 153

Wn.2d 475, 499-500, 105 P.3d 9 (2005); *State ex rel. Bugge v. Martin*, 38 Wn.2d

834, 840-41, 232 P.2d 833 (1951). We do not have the authority to second-guess

how decisions are made in the legislature.

Justice Stephens is correct that the enrolled bill doctrine prohibits "judicial

meddling" into legislative processes. Dissent (Stephens, J.) at 13. And I agree that

4

the court "should not go beyond the four corners of the enacted measures." *Id.* at

14. But without going beyond the "four corners" of I-940 itself, there is only an

unamended, certified enrolled bill that was accepted by the legislature pursuant to

article II, section 1(a) of the state constitution. Engrossed Substitute House Bill

3003 was enacted separately, outside of the "four corners" of I-940. It is only

through judicial meddling that the court could conclude I-940 was *not* enacted

"without change or amendment . . . before the end of" the legislative session.

CONST. art. II, § 1(a).

Justice Stephens' reasoning thus directly implicates the enrolled bill doctrine

and falsely asserts that "the legislature in fact rejected I-940." Dissent (Stephens,

J.) at 15. Meanwhile, Justice Madsen contends that "the legislature has proposed

an alternative measure." Concurrence/dissent (Madsen, J.) at 3; *see also* dissent

(Stephens, J.) at 10 n.5. That is not what happened. The legislature certified that I-

940 was accepted and enacted on March 8, 2018. Clerk's Papers at 132-40

(CERTIFICATION OF ENROLLMENT: INITIATIVE 940, 65th Leg, Reg. Sess. (Wash.

2018)). Unlike the procedure with I-940, when the legislature rejects an initiative

with an alternative proposal, neither the initiative nor the proposal is passed into

law before submission to the secretary of state. And *Black's Law Dictionary*

defines "proposal" as it is commonly understood, that is, temporary: "Something

offered for consideration or acceptance; a suggestion." BLACK'S LAW DICTIONARY

1413 (10th ed. 2014). As a validly enacted statute, Laws of 2018, chapter 11 is not a "proposal" offered for consideration described by article II, section 1(a). Laws do not become mere proposals at the discretion of this court.

Here, regardless of what happened before its passage, I-940 was not rejected, and an alternative was not proposed. I-940 was validly enacted into the 2018 session laws by the state legislature. Questioning the express declaration of the legislature regarding the acceptance of a duly enacted bill is necessarily peeking into the legislative process preceding the enactment of a statute. Such action by this court is impermissible according to the enrolled bill doctrine. *Wash. State Grange*, 153 Wn.2d at 499-500.

As was made clear in *Jones*, regardless of the evidence presented, this court does not have the constitutional authority to question or contradict the legislature's certification that I-940 was accepted without amendment and duly certified into law as chapter 11 of the 2018 session laws. *See* dissent (Stephens, J.) at 13-15. "[T]here is no method provided by the constitution or laws for a direct attack upon an enrolled bill." *Jones*, 6 Wash. at 460. The procedural mechanics of the legislature, however novel or peculiar, are fully irrelevant when this court is presented with a certified bill.

## CONCLUSION

This unprecedented judicial act departs from over a century of state precedent and undermines the stability of our laws. This decision will allow similar challenges not just to other initiatives but to any enrolled law where a question arises about whether the legislature complied with certain constitutional procedures.

Apparently free to disregard the enrolled bill doctrine, creative petitioners might now assert a law should be ripped from the statute books—without a judgment about its constitutionality—if, for example, they can demonstrate an improper vote of yeas and nays occurred pursuant to article II, section 22. Or perhaps a law might be dissolved because the legislature neglected to have a presiding officer of each house in open session properly sign a bill according to article II, section 32. A petitioner might soon ask this court to retract an enacted law because it was not introduced at least 10 days before the final adjournment of the legislature as required by article II, section 36, or entered into the proper legislative journal, if requested, pursuant to article II section 21. According to the precedent set by the split opinion in this case and the reasoning in Justice Stephens' dissent, this court is willing to invade the exclusive province of the legislature and allow petitioners to corrupt the finality and deference this court usually affords to the laws bearing the certified seal of Washington.

7

The result in this case upends the balance of power between the branches of government when it asserts that valid law is "not a law" by subjecting it to the uncertainties of the ballot. In this instance, the danger of breaching the separation of powers is less about upholding the will of the legislature than it is about keeping the court within its realm of constitutional authority. This court violates the trust of the people of Washington when it frustrates the finality of the people's initiative to the legislature and neglects to protect the sanctity of law.

_____Yu, J._____

*Eyman, et al. v. Wyman, et al.*

No. 95749-5

MADSEN, J. (concurring/dissenting)—I agree with the lead opinion to the extent

that it holds Engrossed Substitute House Bill (ESHB) 3003 amended Initiative 940 (I-

940) in the same session in which the legislature enacted I-940. In my view, however,

because I-940 was not enacted "without change or amendment" in the same regular

session, it must be certified to the people for a vote as provided in article II, section 1(a)

of our state constitution. Accordingly, I disagree with the lead opinion that neither

measure should be placed on the November ballot. The governing constitutional

provision states in relevant part as follows:

> (a) Initiative: The first power reserved by the people is the initiative.
> Every such petition shall include the full text of the measure so proposed.
> In the case of initiatives to the legislature and initiatives to the people, the
> number of valid signatures of legal voters required shall be equal to eight
> percent of the votes cast for the office of governor at the last gubernatorial
> election preceding the initial filing of the text of the initiative measure with
> the secretary of state.
> Initiative petitions shall be filed with the secretary of state not less
> than four months before the election at which they are to be voted upon, or
> not less than ten days before any regular session of the legislature. If filed
> at least four months before the election at which they are to be voted upon,
> he shall submit the same to the vote of the people at the said election. If
> such petitions are filed not less than ten days before any regular session of
> the legislature, he shall certify the results within forty days of the filing. If
> certification is not complete by the date that the legislature convenes, he
> shall provisionally certify the measure pending final certification of the

measure. *Such initiative measures, whether certified or provisionally certified, shall take precedence over all other measures in the legislature except appropriation bills and shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session.* If any such initiative measures shall be enacted by the legislature it shall be subject to the referendum petition, or it may be enacted and referred by the legislature to the people for approval or rejection at the next regular election. *If it is rejected or if no action is taken upon it by the legislature before the end of such regular session, the secretary of state shall submit it to the people for approval or rejection at the next ensuing regular general election. The legislature may reject any measure so proposed by initiative petition and propose a different one dealing with the same subject, and in such event both measures shall be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election.*

WASH. CONST. art. II, § 1(a) (emphasis added). As the italicized language attests, under the circumstances here, our constitution requires that I-940 be placed on the November ballot.

I also disagree with the lead opinion's conclusion that ESHB 3003 is unconstitutional. Instead, I agree with Justice Stephens's dissent, which notes that "the plaintiffs make no claims of invalid or unconstitutional action" and, thus, "[c]ontrary to the lead opinion's approach, we . . . need not decide whether any legislative enactment was invalid or unconstitutional." Dissent (Stephens, J.) at 14. Further, I agree that "the legislature validly passed both I-940 and ESHB 3003." *Id.* Nowhere in the above quoted language from article II section 1(a) does it indicate that legislative attempts to amend an initiative petition violates the constitution. Rather, such action triggers specific consequences.

2

I part ways with the dissents by Chief Justice Fairhurst and Justice Stephens to the extent they would require that both I-940 and ESHB 3003 be placed on the ballot. I acknowledge that in the usual circumstance—where the legislature has proposed an alternative measure addressing the same subject matter as an initiative petition—placing both measures on the ballot would be the appropriate result under article II, section 1(a). But in this instance, ESHB 3003, by its express terms, voids itself if I-940 is placed on the ballot. ESHB 3003 provides in relevant part:

> This act takes effect June 8, 2018, only if chapter . . . (Initiative Measure No. 940), Laws of 2018, is passed by a vote of the legislature during the 2018 regular legislative session and a referendum on the initiative under Article II, section 1 of the state Constitution is not certified by the secretary of state. If the initiative is not approved during the 2018 regular legislative session, or if a referendum on the initiative is certified by the secretary of state, this act is void in its entirety.

Clerk's Papers (CP) at 55 (LAWS OF 2018, ch. 10, § 10) (alteration in original). It would be absurd to require that a void proposal be placed on the ballot for a vote of the people. Thus, in this circumstance, only I-940 should be placed on the ballot as required by article II, section 1(a).

In sum, in result I agree in part with the majority that ESHB 3003 does not go on the November ballot. I agree in part with the noted dissents that I-940 does go on the November ballot. Accordingly, the writ of mandamus, "directing the Secretary of State to certify onto the 2018 general election ballot . . . Initiative 940," should be affirmed. CP at 253.

For the reasons discussed, I concur in part and dissent in part.

3

Madsen, J.

No. 95749-5

FAIRHURST, C.J. (dissenting)—Article II, section 1(a) of the Washington State Constitution provides a framework for what the legislature may constitutionally do with certified initiative measures brought before them. If the legislature enacts an initiative measure "without change or amendment" during the regular session, the initiative then becomes law. WASH. CONST. art. II, § 1(a). However, if the legislature fails to enact the initiative measure "without change or amendment" by taking no action on the initiative or by rejection of the initiative, either explicitly or by proposing an alternative during the regular session, then the initiative must be placed on the ballot along with the alternative proposal, if applicable. *Id.*

In this case, we consider what the legislature did and did not do throughout the regular session (not simply what action it took at one moment in time) and place those actions within the constitutional framework. The legislature did not take "no action." *Id.* The legislature did two things—it passed Initiative 940 (I-940) and

Engrossed Substitute House Bill 3003 (ESHB 3003). LAWS OF 2018, chs. 11, 10. ESHB 3003 expressly amends I-940. Therefore, I-940 was not enacted during the regular session "without change or amendment." Rather, I-940 was rejected through the passage of ESHB 3003 as an alternative proposal, albeit not labeled as one. Despite these machinations by the legislature, the outcome is clear. The legislature passed two laws during the same regular session that resulted in legislation that differs from I-940 as certified.[1] Therefore, both I-940 and ESHB 3003 must go on the ballot. We should grant the writ of mandamus and compel the secretary of state to take such action.

---

[1] I-940 cannot even be directly incorporated into the Revised Code of Washington because ESHB 3003 expressly amends I-940.

Fairhurst, C.J.

*Eyman, et al. v. Wyman*
(Stephens, J., dissenting)

No. 95749-5

STEPHENS, J. (dissenting)—The central question in this case is whether the legislature enacted Initiative 940 (I-940), Laws of 2018, chapter 11, without change or amendment during the 2018 session. Unless it did, article II, section 1(a) of the Washington State Constitution requires the secretary of state to submit the initiative measure to the people for a vote in the November general election, along with any different legislative measure dealing with the same subject. To answer this question, we are not concerned with how the legislature structured or sequenced the bills it passed. We care what it in fact did.

What the legislature did in the 2018 session was to reject I-940 as proposed and instead enact an amended version. Though it did so in two steps, when all was said and done, I-940 did not pass, but a new measure emerged—"I-940B," as the plaintiffs style it. This measure, enacted in Laws of 2018, chapter 10 (Engrossed Substitute House Bill 3003 (ESHB 3003), 65th Leg., Reg. Sess. (Wash. 2018)) and

chapter 11 (I-940) differs from the initiative measure proposed to the legislature and is properly regarded as a "different one dealing with the same subject" under article II, section 1(a). The constitutionally compelled result is clear: both I-940 and I-940B must be placed on the November 2018 ballot for a vote of the people. We should grant the writ of mandamus

## BACKGROUND

A group known as De-Escalate Washington proposed I-940, an initiative measure concerning police use of deadly force. They gathered sufficient signatures to require the secretary of state to certify the measure to the legislature for consideration during the 2018 legislative session. Discussions ensued, and a compromise bill amending and supplementing I-940 was introduced as ESHB 3003. This bill was expressly contingent on I-940 passing and becoming effective following the constitutional referendum period.[1]

Near the end of the session, the legislature passed both ESHB 3003 and I-940. *See* LAWS OF 2018, chs. 10, 11. First, on March 7, 2018, the house passed ESHB

---

[1] "This act takes effect June 8, 2018, only if chapter . . . (Initiative Measure No. 940), Laws of 2018, is passed by a vote of the legislature during the 2018 regular legislative session and a referendum on the initiative under Article II, section 1 of the state Constitution is not certified by the secretary of state. If the initiative is not approved during the 2018 regular legislative session, or if a referendum on the initiative is certified by the secretary of state, this act is void in its entirety." LAWS OF 2018, ch. 10, § 10 (alteration in original).

3003; then, on March 8, 2018, the senate passed ESHB 3003 and the governor signed it into law. Shortly thereafter, both the house and senate passed I-940. The governor did not sign I-940 because the constitution does not make initiative measures subject to gubernatorial action. WASH. CONST. art. II, § 1(d).

Because I-940 remains subject to popular referendum for 90 days under article II, section 1(b), its effective date is June 7, 2018, subject to the outcome of this action. As noted, by its express terms, ESHB specifies an effective date one day later, conditioned on I-940 becoming effective.

Plaintiff Tim Eyman and Plaintiff-Intervenor state Senator Mike Padden sought declaratory relief and a writ of mandamus in Thurston County Superior Court, to direct the secretary of state to place both I-940 and what is described above as I-940B on the November 2018 general election ballot.[2] They brought a motion for summary judgment, and the superior court granted relief in part. The court agreed with Eyman and Padden that the legislature did not pass I-940 "without change or amendment" during the 2018 session, so article II, section 1(a) requires I-940 be submitted to the people for a vote in the November 2018 general election.

---

[2] The complaint states, "Plaintiff Eyman requests an Order from this Court directing the Secretary of State to place on the November 2018 regular general election ballot for a vote of the people both I-940 and the legislature's proposed alternative, namely, the text of I-940 as amended by Engrossed Substitute House Bill 3003." Clerk's Papers at 15 (First Am. Compl., para. 135).

Verbatim Report of Proceedings (April 20, 2018) (VRP) at 62. However, the superior court disagreed that the passage of ESHB 3003 resulted in a different measure on the same subject that must also be placed on the ballot. *Id.* The court observed, "Potentially, it could be, I think, interpreted that way . . . . However, I am compelled by the fact that, in fact, that was offered as an amendment to the legislation when it was before the legislature, and the legislature said, no, specifically, this is not an alternative to I-940." *Id.* The superior court issued a writ directing the secretary of state to place I-940 as proposed to the legislature on the November ballot. Clerk's Papers (CP) at 257.

The legislature and I-940 proponent De-Escalate Washington appealed the superior court's ruling directly to this court. Eyman and Padden cross appealed. We granted a motion to intervene by Lieutenant Governor Cyrus Habib. The secretary of state did not join the appeal but indicated the need for a timely resolution in order to prepare ballots for the November 2018 general election. We accelerated the schedule for review and heard oral argument on June 28, 2018.

ANALYSIS

We must decide the effect of article II, section 1(a) of the Washington State Constitution on the facts of this case. We review summary judgment motions and

-4-

constitutional questions de novo. *Madison v. State*, 161 Wn.2d 85, 92, 163 P.3d 757 (2007) (plurality opinion).

The relevant constitutional language states that initiative measures certified to the legislature

> shall take precedence over all other measures in the legislature except appropriation bills and shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session. If any such initiative measures shall be enacted by the legislature it shall be subject to the referendum petition, or it may be enacted and referred by the legislature to the people for approval or rejection at the next regular election. If it is rejected or if no action is taken upon it by the legislature before the end of such regular session, the secretary of state shall submit it to the people for approval or rejection at the next ensuing regular general election. The legislature may reject any measure so proposed by initiative petition and propose a different one dealing with the same subject, and in such event both measures shall be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election.

WASH. CONST. art. II, § 1(a).

This constitutional provision frames the two questions before us:

(1) Whether the legislature enacted I-940 without change or amendment in the 2018 session.

(2) Whether I-940B is a different legislative measure dealing with the same subject as I-940.[3]

---

[3] I fundamentally disagree with the lead opinion's framing of the issues as whether I-940 and ESHB 3003 were "validly enacted and constitutional." Lead opinion at 14. The plaintiffs make no argument that either of these measures is invalid or unconstitutional. They simply seek a judicial declaration as to the constitutional effect of the legislature's actions under article II, section 1(a), and a writ of mandamus consistent with that effect. *See* CP at 14-15.

I. The Legislature Did Not Enact I-940 without Change or Amendment during the 2018 Legislative Session, so the Initiative Measure Must Be Placed on the November 2018 General Election Ballot

To adopt a proposed initiative, article II, section 1(a) requires the legislature to enact it "without change or amendment by the legislature before the end of such regular session." This is the only instance in which the initiative becomes law without further action. As an opinion of the attorney general in 1971 recognized, a natural reading of the constitutional language indicates that any alteration of an initiative is effectively a legislative rejection of the measure. *See* 1971 Op. Att'y Gen. No. 5, at 3 ("In light of that language ['without change or amendment by the legislature'] any alteration in the text of an initiative to the legislature would therefore of necessity constitute a rejection of the initiative and a proposal of an alternative measure on the same subject."). Here, of course, the legislature did not alter the text of I-940 in the bill setting forth the initiative measure. Instead, it introduced a separate bill, ESHB 3003, which expressly amended the measure. The legislature and De-Escalate Washington believe this different approach makes all the difference. I do not.

Article II, section 1(a) is not concerned with how the legislature styles or sequences the bills it considers. We should not imagine that the drafters of our 7th Amendment failed to anticipate creative approaches to legislating or meant to

-6-

restrict the "without change or amendment" clause to a single vote on a single bill. There is no language in the constitutional text that requires an isolated bill-by-bill analysis. As in all matters of constitutional interpretation, we should be guided by plain language and common sense. The inescapable reality is that the 2018 legislature did not in fact adopt I-940 "without change or amendment" but, rather, adopted the initiative in one bill and adopted amendments to the measure in another. This was tantamount to rejection of the measure as proposed, necessitating a vote of the people in the next general election.

This result is clear—unless we accept the argument that article II, section 1(a) allows for amendments to an initiative during the same session in which an initiative is enacted. The legislature and De-Escalate Washington make that argument, but I agree with the lead opinion that it is wrong. *See* Opening Br. of Wash. State Legislature at 14-15; De-Escalate Wash.'s Opening Br. at 13-14. Following established grammatical rules, the clause "before the end of such regular session" embraces the clause "without change or amendment by the legislature," meaning that the legislature cannot in the same session adopt but amend an initiative measure and thereby avoid giving the people their say at the ballot box. *See* lead opinion at 20-22. A contrary reading of article II, section 1(a) would allow the legislature to circumvent the constitutional promise of ballot access by "passing" while

*Eyman, et al. v. Wyman, et al.*, 95749-5 (Stephens, J., dissenting)

immediately altering an initiative measure in a single session. This is not faithful to constitutional design. In short, to enact "without change or amendment by the legislature before the end of such regular session" means just that.[4]

I disagree with the lead opinion, however, as to the result of the legislature having amended I-940 during the 2018 regular session. The lead opinion concludes that the amending bill, ESHB 3003, "violates" article II, section 1(a) and is therefore invalid. Lead opinion at 21. It thus strikes the amendments to I-940 and treats the initiative measure as having been enacted without change or amendment. This is a fiction at odds with what the legislature actually did, and it achieves a result that leaves the people without their say. I would not question whether I-940 or ESHB 3003 were validly enacted. Instead, accepting at face value the sum total of the legislature's actions on I-940 and ESHB 3003, I would recognize the effect of article II, section 1(a) on those actions. As the attorney general's opinion in 1971 observed,

---

[4] In rejecting the legislature's power to at once enact and amend an initiative, I do not rely on the reasoning of the superior court that the "take precedence" language in article II, section 1(a) requires the legislature to vote on a proposed initiative *first*. *See* VRP at 58. Both De-Escalate Washington and the legislature properly read this language as simply requiring the legislature to promptly introduce and consider an initiative measure once it is certified, not to dictate the sequence of legislative action. De-Escalate Wash.'s Opening Br. at 14-16; Opening Br. of Wash. State Legislature at 27-28. The legislature points out that the "take precedence" language is effectuated in part by procedural rules that exempt proposed initiatives from the deadlines and cutoff dates generally applicable to proposed legislation. *See* Opening Br. of Wash. State Legislature at 28.

when an initiative measure is enacted with any alteration, this constitutes a rejection of the proposed initiative and the proposal of an alternative. 1971 Op. Att'y Gen. No. 5, at 3. "Under the provisions of Article II, § 1(a) . . . both measures would then have to be submitted to the voters." *Id.* (citing *Farris ex rel. Dorsky v. Goss*, 143 Me. 227, 60 A.2d 908 (1948)). That is what should happen here.

II. By Enacting Both ESHB 3003 and I-940 in the 2018 Legislative Session, the Legislature Created a Different Measure on the Same Subject as I-940, Which Must Also Be Placed on the November 2018 General Election Ballot

The superior court issued a writ of mandamus directing the secretary of state to place I-940 on the November 2018 general election ballot. However, the court declined to also require that the version of I-940 amended by ESHB 3003 (so-called I-940B) be placed on the ballot as an alternative measure. The court found it significant that ESHB 3003 was not a stand-alone bill and that the legislature did not intend it as an alternative to I-940. *See* VRP at 62 ("I am compelled by the fact that, in fact, that was offered as an amendment to the legislation when it was before the legislature, and the legislature said, no, specifically, this is not an alternative to I-940."). I would modify this aspect of the writ of mandamus and direct the secretary of state to place both I-940 and I-940B on the November 2018 general election ballot.

Article II, section 1(a) is not concerned with whether the legislature regarded ESHB 3003 as creating an alternative to I-940. The term "alternative measure" does not appear in the text. The constitutional provision operates not upon what the legislature intended but on what it in fact did. While the legislature, in its brief, cites past instances in which it has expressly proposed an alternative measure to an initiative, article II, section 1(a) does not require such express direction.[5] It has long been clear that any legislative measure enacted on the same subject as an initiative certified to the legislature will be regarded as an alternative measure, even if the overlap is inadvertent. *See Dep't of Revenue v. Hoppe*, 82 Wn.2d 549, 558, 512 P.2d 1094 (1973) (concluding statute conflicted with proposed initiative measure despite any legislative intent "to subvert the initiative power of the people"); *see also* 1971 Op. Att'y Gen. No. 5, at 2-3, 4 (noting that any change, whether to the text of an initiative or by separate statute constitutes rejection of the initiative and proposal of an alternative).

---

[5] While article II, section 1(a) speaks in terms of a legislative "proposal," this should not be read to distinguish proposals from enactments. Instead, use of the word "proposal" in this context logically reflects the impact of the constitutional provision on the legislature's action. While the legislature may purport to enact a different measure on the same subject as a certified initiative, under article II, section 1(a) such enactment constitutes a mere proposal because the measure must be submitted to a vote of the people.

In addressing the effect of the legislative enactment of a bill on the same subject as a certified initiative measure, the 1971 attorney general opinion cited a case from Maine involving a constitutional provision similar to article II, section 1(a). *Farris ex rel. Dorsky*, 60 A.2d 908. The Maine court held that an initiative and a separate bill enacted during the same legislative session were alternative or substitute measures, regardless of the legislature's intent. *See id.* at 911 ("[W]e are not concerned, as we have tried to point out above, with how the legislature may have regarded [the substitute bill]. We must decide only what it is in fact.").

Here, all parties agree that ESHB 3003 and I-940 deal with the same subject. The legislature admitted as much in its answer to the plaintiff's complaint. *See* CP at 69 (Legislature Answer to First Am. Compl., para. 118). It is also undisputed that ESHB 3003 expressly amends I-940, albeit prospectively. The main argument against concluding that the resulting measure, I-940B, is an alternative to I-940 seems to be that ESHB 3003 is not self-contained, so it would be necessary for this court or the secretary of state to "draft a new piece of legislation altogether." Reply Br. of Cyrus Habib at 11; *see also* Opening Br. of Wash. State Legislature at 31 (arguing court would need "to essentially draft new legislation by stitching together ESHB 3003 and I-940"). I find this argument unconvincing.

First, there is nothing novel in having amendments to an initiative be proposed in a separate bill. Over 40 years ago, the attorney general addressed a question about this very possibility, asking, "Can the legislature pass a statute relating to a particular section, or sections, in the initiative so as to make corrections to an initiative that has been submitted to the legislature?" 1971 Op. Att'y Gen. No. 5, at 4. He properly regarded this two-step approach as being no different from legislative action directly amending a proposed initiative: "We would answer this question in essentially the same manner as question (1) . . . . Any such 'corrective' legislation would constitute an alternative proposal which would have to be submitted to the voters along with the original initiative itself." *Id.*

Nor should we worry that additional drafting is necessary to create the alternative measure the secretary of state must place on the ballot alongside I-940. The 2018 legislature's actions are complete. Had there been no challenge, the code reviser's office would have performed its usual function of incorporating the provisions of I-940 and ESHB 3003 into the Revised Code of Washington. No more is involved in preparing so-called I-940B for the November 2018 general election ballot. Notably, the secretary of state has not protested or sought further guidance from this court. I-940B is properly understood as a different legislative measure on

-12-

the same subject as I-940. By the clear direction of article II, section 1(a), it must be placed on the November 2018 general election ballot for a vote of the people.

III. The Enrolled Bill Doctrine Is Not Implicated by a Judicial Decision Declaring the Constitutional Effect of Legislative Action and Directing the Secretary of State To Act Consistent with the Constitution

The legislature, De-Escalate Washington, and intervenor, Lieutenant Governor Cyrus Habib, argue that granting a writ of mandamus in this case would run afoul of the enrolled bill doctrine. They criticize the superior court for violating this doctrine by looking behind the face of the bills passed to question legislative procedures or intent. *See* Opening Br. of Wash. State Legislature at 24-26; De-Escalate Wash.'s Opening Br. at 12; Opening Br. of Cyrus Habib at 8-20. While their concerns are valid, judicial action that gives effect to the plain language of article II, section 1(a) does not implicate the enrolled bill doctrine.

The enrolled bill doctrine prohibits judicial meddling into legislative processes. Thus, we do not inquire into the procedures or actions preceding the enactment of a statute that is "'properly signed and fair upon its face.'" *Wash. State Grange v. Locke*, 153 Wn.2d 475, 499-500, 105 P.3d 9 (2005) (quoting *Schwartz v. State*, 85 Wn.2d 171, 175, 531 P.2d 1280 (1975)). I agree with the legislature and the lieutenant governor that much of the superior court's reasoning implicates this doctrine. For example, questioning whether legislators would have voted for I-940

-13-

had ESHB 3003 not already passed seems an impermissible inquiry. At the same time, asking whether the legislature intended to create an alternative proposal to I-940 when it passed ESHB 3003, including by looking at rejected amendments to the bill, also invites judicial peek-a-boo into legislative processes. We should not go beyond the four corners of the enacted measures, or question the validity of the legislature's actions.

Properly applying article II, section 1(a) to the facts of this case does not implicate the enrolled bill rule. Article II, section 1(a) simply requires us to consider the constitutional effect of the measures enacted. We need not consider the sequence or timing of the legislative action, or the intent of the legislators who voted on I-940 and ESHB 3003. To repeat the refrain: we care only what the legislature in fact did. Article II, section 1(a) dictates the constitutional effect of its actions.

Contrary to the lead opinion's approach, we also need not decide whether any legislative enactment was invalid or unconstitutional. As noted, the plaintiffs make no claims of invalid or unconstitutional action. This case is thus unlike those in which legislative action is challenged as exceeding constitutional limits. *See, e.g.*, *Lee v. State*, 185 Wn.2d 608, 629, 374 P.3d 157 (2016) (invalidating initiative that sought to force constitutional amendment). We should accept that the legislature validly passed both I-940 and ESHB 3003 and recognize the clear constitutional

result of that action under article II, section 1(a). Because the legislature in fact rejected I-940 as proposed and enacted a different measure on the same subject, both I-940 and I-940B "*shall* be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election." WASH. CONST. art. II, § 1(a) (emphasis added). A writ of mandamus is appropriate to compel this action. *See Gerberding v. Munro*, 134 Wn.2d 188, 195, 949 P.2d 1366 (1998) ("Mandamus will lie to compel a state officer to undertake a clear duty.").

IV. Article II, Section 1(a) Does Not Require a Finding that the Legislature Made a "Palpable Attempt at Dissimulation" in Order to Decide the Constitutional Effect of Legislative Action

The above analysis does not follow the legislature's proposed test extrapolated from *Washington State Legislature v. Lowry*, 131 Wn.2d 309, 931 P.2d 885 (1997). That test, which would have us query whether legislative action enacting and amending a proposed initiative reflects a "'palpable attempt at dissimulation'" finds no home in article II, section 1(a).[6] *Id.* at 320 (quoting *State ex rel. Hamilton v. Martin*, 173 Wash. 249, 257, 23 P.2d 1 (1933)). The constitutional text does not make any distinction between valid and invalid

---

[6] As the plaintiffs point out, this test is also unworkable from a practical standpoint, as the secretary of state needs clear guidance to make a time-sensitive decision between the end of the legislation and the date for printing ballots. Br. of Resp'ts & Cross-Appellants at 34-35.

legislative votes on an initiative—an inquiry that itself risks running afoul of the enrolled bill doctrine. Rather, it tells us what happens whenever the legislature amends a proposed initiative during the same session in which it enacts the measure. This action constitutes a rejection of the initiative measure, and the amended version constitutes a different measure on the same subject. Both measures must then be placed on the next general election ballot for a vote of the people.

The test the legislature would have us employ arose in different circumstances and serves different purposes. The *Lowry* decision effectuates the implied constitutional premise that one branch of government may be restrained when a natural consequence of its actions is to circumvent the powers reserved to another branch. 131 Wn.2d at 320-21, 330-32. In this case, there is no need to inquire into whether the legislature has upset the balance of power between the legislature and the people. Such an inquiry might serve to draw attention to the purpose behind article II, section 1(a) to preserve the people's initiative power, but there is no need to look beyond the plain constitutional language to discern the result that necessarily flows from the legislature's failure to enact a proposed initiative measure without change or amendment. The measure, along with any different legislative measure dealing with the same subject, must be placed on the next general election ballot.

Thus, we are not concerned with restraining the legislature's power, but recognizing the result of its actions consistent with article II, section 1(a).

CONCLUSION

Article II, section 1(a) provides only one instance in which a certified initiative measure becomes law by vote of the legislature alone: that is, when it is enacted without change or amendment by the legislature in the session in which it is certified. That did not happen here. By enacting both I-940 and ESHB 3003 amending I-940, the 2018 legislature effectively rejected I-940 and proposed a different measure on the same subject. By the clear directive of article II, section 1(a) of the Washington State Constitution, both alternatives must be placed on the November 2018 general election ballot. I would grant the plaintiff's motion for a writ of mandamus directing the secretary of state to take such action.